**UNITED STATES FIDELITY &
GUARANTY COMPANY,
Plaintiff,**

v.

**PATRIOT'S POINT DEVELOPMENT
AUTHORITY, et al., Defendants.**

**Ethel WENRICH, et al., Plaintiffs,**

v.

**PATRIOT'S POINT DEVELOPMENT
AUTHORITY, et al., Defendants.**

**David B. HOLTZMAN, et al., Plaintiffs,**

v.

**PATRIOT'S POINT DEVELOPMENT
AUTHORITY, et al., Defendants.**

**Civ. A. Nos. 2:90–0196–8, 2:90–
278–8 and 2:90–279–8.**

United States District Court,
D.South Carolina,
Charleston Division.

Sept. 3, 1991.

Stephen Peterson Groves, Sr., Thomas S. Tisdale, Jr., Young, Clement, Rivers & Tisdale, Charleston, S.C., Stephen J. Immelt, Thomas F. O'Neil, III, Baltimore, Md., for plaintiff in No. 2:90–0196–8.

George Hunter McMaster, Tompkins, McMaster and Thomas, John Condon Conway, Jr., Dennis James Christensen, Wise and Cole, P.A., Morris Dawes Cooke, Jr., George Trenholm Walker, Charleston, S.C., Roger E. Warin, Antonia B. Ianniello, Steptoe & Johnson, Washington, D.C., W. Sidney Davis, Jr., Marc J. Schiller, Davis, Markel & Edwards, Ronald B. Hauben, New York City, Jack N. Sibley, Howell Hollis, III, Freeman & Hawkins, Atlanta, Ga., Richard S. Rosen, Rosen, Rosen & Hagood, Joseph H. McGee, Buist, Moore, Smythe & McGee, David Brian McCormack, Morris D. Rosen, Wade H. Logan, III, Holmes & Thomson, Charleston, S.C., Richard D. Wilkinson, Gail E. Xiques, Lowenstein Sandler Kohl Fisher & Boylan, Roseland, N.J., Lawrence J. Fox, James M. Sweet, Drinker, Biddle & Reath, Philadelphia, Pa., Paul D. Krause, John T. May, Jordan, Coyne, Savits & Lopata, Washington, D.C., James B. Vaught, Mt. Pleasant, S.C., for defendants in No. 2:90–0196–8.

Francis Thomas Draine, Columbia, S.C., J. Kendall Few, J. Kendall Few, P.A., James Robinson Gilreath, Greenville, S.C., for plaintiffs in No. 2:90–278–8.

Donald Harland Stubbs, Columbia, S.C., Thomas Dewey Wise, Wise & Cole, P.A., David Paul McCann, James Kevin Holmes, Steinberg, Spitz, Goldberg, Pearlman, Holmes & White, Charleston, S.C., for defendants in No. 2:90–278–8.

Mark Charles Tanenbaum, Charleston, S.C., Thornwell Forrest Sowell, III, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., J. Michael Rediker, David R. Donaldson, David J. Guin, Birmingham, Ala., Richard David Chard, North Charleston, S.C., for plaintiffs in No. 2:90–279–8.

Marvin Lee Robertson, Jr., Mt. Pleasant, S.C., Robert Michael Drose, Charleston, S.C., Arthur Timothy Jones, Freeman & Hawkins, Atlanta, Ga., Alice Fountain Pay-

lor, Rosen, Rosen & Hagood, Charleston, S.C., for defendants in No. 2:90–279–8.

## ORDER

BLATT, District Judge.

### Factual Background

#### A. The Parties

On March 12, 1987, the Patriot's Point Development Authority ("Development Authority"), a public entity pursuant to South Carolina statute, issued $21 million of high yield, unrated tax exempt revenue bonds. The bond proceeds were to be used to build and develop a hotel and marina complex at Patriot's Point, Charleston, South Carolina (the "Project"), and to make other improvements to the existing Naval Museum, including the construction of a ticket pavilion. The project was to be developed by Patriot's Point Associates ("Associates"), a privately-held partnership. The Development Authority defaulted on the bonds in September, 1988, prior to the Project's completion.

The plaintiffs include a class of bond purchasers, certified for purposes of this settlement only, and United States Fidelity & Guaranty Company—("USF & G")—an insurance company that acquired approximately half of the $21 million offering. USF & G is also a named defendant in the class action. The defendants in these complex cases were each associated in some fashion with either the bond offering documents or the subsequent construction of the Project. The gist of plaintiffs' complaints is that they were misled into acquiring the bonds based on alleged misstatements in the offering documents, and that they were injured by the Project's failed completion.

#### B. The Pending Settlement Agreements

The class bondholders have entered into three settlement agreements. Each of the settling defendants is alleged by plaintiffs to have been a key player in the bond offering and the alleged security default.

The first settlement is between the class bondholders and the Development Authority.[1] The Development Authority was the issuer of the alleged fraudulent bonds and offering documents, and received the $21 million bond proceeds (less certain expenses). The Development Authority selected Associates to develop the Project and was intimately involved in the design and construction of the Project at every step. The Development Authority, according to the offering documents, was required to approve withdrawals from the Project Construction Fund during the construction phase, and following completion, "to maintain in good condition and to operate or cause to be operated said Project, in a reasonable and prudent manner." The Development Authority also represented to prospective purchasers in the offering documents that, in the event of default, it would "use its best efforts to obtain payment from all reasonable available sources in order to make payments on the Bonds...." The Development Authority's former Executive Director was indicted following the filing of this lawsuit for improperly taking money from the Development Authority for his private use.

The second settlement is between the class bondholders and Messrs. Bennett and Davidson. These individuals were partners in the law firm that served as general counsel to Associates, the Developer of the Project. The first named partner of that law firm was John Conway, a nonsettling defendant alleged by class plaintiffs to have been the principal wrongdoer and moving force behind the Project. Since the filing of this lawsuit, Mr. Conway has also been indicted for activities connected with the Project.[2] The Conway firm, according

---

**1.** This settlement also includes various individual defendants associated with the Development Authority ("Development Authority"), including its individual members and outside counsel. The settlement would also bar the nonsettling defendants from bringing contribution claims against the state of South Carolina, officers and

employees of the State of South Carolina, the Budget and Control Board and the Attorney General's office.

**2.** None of the other nonsettling defendants has been charged with any criminal wrongdoing. Further, the court notes that no one has been

to plaintiffs, participated in the preparation and review of the offering documents and falsely opined that the Official Statement was true and correct in all material respects.

The third settlement is between the class bondholders and USF & G. As noted above, in addition to being a plaintiff bondholder, USF & G is a defendant in the class complaint. According to class plaintiffs, although USF & G purchased approximately half the revenue bonds (and thus is a plaintiff-purchaser), it did so with a "kickback" unavailable and undisclosed to the class purchasers. The class claims that USF & G is liable as "a de facto partner of the developer." [3]

The settling defendants are each charged with fraudulently violating section 10(b) of the Securities Exchange Act of 1934 and Section 17(a) of the Securities Act of 1933, as well as the statutory and common law of South Carolina. The three partial settlements will not end this complex litigation, since a number of the named defendants are not participating in any of the settlement agreements.

### C. The Bar Order

Each of the settlements contains a different bar order provision. The Development Authority settlement is contingent on the entry of a bar order which would preclude the nonsettling defendants from suing the settling defendants for contribution, indemnity and any other claims. The Development Authority and plaintiffs have jointly petitioned the court for the entry of a bar order that would contain a *pro tanto* setoff against any judgment arising from a securities law violation. The settlement, however, is not contingent on the entry of a *pro tanto* setoff; thus, the credit method

selected by the Court will have no impact on the effectuation of this settlement.

The Bennett and Davidson settlement is contingent upon the entry of a bar order that contains a *pro tanto* setoff, and plaintiffs have reserved the right to vacate the settlement *if a different credit method is adopted*. This is the only settlement that may be affected by the adoption of a credit method other than a *pro tanto* offset. The USF & G settlement contains no bar order or setoff provision.

### D. Status of this Case

Although the complaints in this action were filed in February, 1990, the Court, on March 9, 1990, stayed discovery in an effort to permit the parties to negotiate a possible settlement of all claims. Although such a complete settlement did not occur, certain parties entered into settlement agreements. The Plaintiffs agreed to accept approximately $9.6 million in settlement of their claims against the Authority Defendants and $500,000 in settlement of their claims against Bennett and Davidson of the Conway firm.[4] Various documents have been produced among the parties, and the Court has permitted limited merits depositions. The court has ruled on earlier filed motions and the defendants have now answered the plaintiffs' complaints.

### Conclusions of Law

#### A. Jiffy Lube

The issue before this Court was recently addressed, but not decided, by the Fourth Circuit Court of Appeals. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir.1991). *Jiffy Lube* involved seven consolidated class actions which alleged federal securities and state law claims similar to those raised in this case. The class in *Jiffy Lube* entered into a partial settlement with sev-

---

convicted of any criminal wrongdoing at this time.

**3.** The class plaintiffs and USF & G have entered into an agreement to divide the proceeds from the Development Authority, Bennett and Davidson. That agreement has no bearing on this decision regarding the method of credit.

**4.** In addition, the minority bondholders have agreed to release all claims against USF & G in

exchange for USF & G's accepting only 45% of any joint settlement from the defendants up to $12 million; the next $400,000 recovered would go to the minority bondholders, the following $100,000 to USF & G, and 45% of any further recovery to USF & G. This settlement agreement is not contingent on the entry of a bar order.

eral of the defendants. The District Court entered a bar order enjoining the nonsettling defendants from pursuing future claims for contribution against the settling parties. The District Court did not specify what setoff method would be applied, leaving that determination open until an eventual judgment, if any, was entered against one or more of the nonsettling defendants. The Court of Appeals vacated the District Court order and remanded, holding that the District Court could not leave unresolved the method for determining the amount of the setoff. *Jiffy Lube*, 927 F.2d at 162.

Although the Court of Appeals did not specify what the appropriate credit method should be, the Court stated that "it is well established that there is a right to contribution for parties jointly liable for violating Section 10(b) and Rule 10(b)–5." *Id.* at 160. The Court further directed that if that right to contribution is extinguished by a bar order, district courts must adopt a credit offset which ensures that the remaining nonsettling defendant "pays no more than his share of any future judgment that may be entered...." *Id.*

The Court of Appeals noted in its decision that "there is no case law in this Circuit which addresses the problem of which of the commonly used setoff methods should be adopted for federal law claims." *Id.* Acknowledging "the difficulties of finding the correct law to apply," the Court of Appeals described three of the most common methods of setoff:

(1) *Pro tanto*, in which the judgment is reduced by the amount paid by the settling defendants; the nonsettling defendant pays the remainder. This method exposes the nonsettling defendant to liability for any deficiency in the judgment, so a hearing focussing on fairness of the settlement to the nonsettling defendant is required for approval. *Id.* at 160–61, n. 3.

(2) *Proportionate fault*, in which the jury assesses the relative culpability of both settling and nonsettling defendants, and the nonsettling defendant pays a commensurate percentage of the judgment. Here, the plaintiffs bear the risk of a 'bad' settlement and thus have incentive to obtain a settlement accurately apportioned according to fault. However, the final determination of the amount of setoff is necessarily delayed, making it difficult to frame a notice to the plaintiff class that fairly presents the merits of the proposed settlement. *Id.* at 160–61, n. 3.

In discussing the proportionate fault method, the Court did not elaborate on the risk of a settlement which in effect had a "bad" impact on the defendants when a verdict or final settlement was reached. In this court's opinion, although the plaintiffs bear the risk of a "bad" settlement where the money received by the plaintiffs in settlement, added to the settling defendants' proportionate monetary liability, is less than the total trial verdict, the nonsettling defendants bear the risk of a "bad" settlement from their standpoint when the money received by the plaintiffs, added to the settling defendants' proportionate monetary liability, is greater than the total trial verdict. The court does not accept the plaintiffs' assertion that the "one satisfaction" rule[5] eliminates any such risks to the defendants. It appears that there is a split among courts which have adopted a proportionate fault rule in regard to any risk borne by nonsettling defendants. Approaches taken by the courts have been referred to as "pure" comparative fault, under which method the set-off is equal to the amount of the settlor's share of fault, regardless of the settlement amount, a result of which it is said that the nonsettling defendants bear the risk of a particularly favorable settlement to the plaintiffs, and "capped" comparative fault, under which the nonsettling defendants would not bear such a risk because a set-off is provided in the amount of the settlement or the settlor's share of the final judgment, based on culpability, whichever is greater. See *MFS Municipal Income Trust v. American*

---

5. "The purpose of this rule is to ensure that a plaintiff receives no more than full compensation for his loss." *Ratner v. Sioux Natural Gas*

*Corp.,* 719 F.2d 801, 804 (5th Cir.1983). See the discussion on the "one satisfaction rule" on pages 26–27.

*Medical Int'l, Inc.,* 751 F.Supp. 279 (D.Mass.1990); *Franklin v. Kaypro Corp.,* 884 F.2d 1222 (9th Cir.1989). Finally, another potential method cited by the Fourth Circuit is as follows:

> (3) *Pro rata,* in which the judgment amount is simply divided by the number of defendants, settling and nonsettling, that are found liable. Relative culpability is not an issue. Since the settling defendants will already have satisfied their debt to plaintiffs, the nonsettling defendant may have to pay a share larger than theirs if the judgment is greater than the settlement amount. Conversely, the nonsettling defendant will pay less if the judgment is less than the settlement amount. (*Jiffy Lube,* 927 F.2d at 160–61, n. 3.)

### B. *Controlling Law*

The first issue which this Court must resolve is the law governing the selection of an appropriate credit method. On June 20, 1991, the Supreme Court held that a uniform federal statute of limitations governs all Rule 10b–5 cases. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). In so holding, the Supreme Court noted that such a uniform rule was needed to avoid "the danger of forum shopping" and "complex and extensive litigation over what should be a straightforward matter." *Id.* at ——, 111 S.Ct. at 2779 (citations omitted). Such dangers must also be avoided as the nascent law of bar orders and credit offsets evolves. Only the application of a uniform federal rule achieves this result.

■ The Court therefore concludes, particularly in view of the Supreme Court's decision in *Lampf,* that the credit method issue is a question of federal law to be decided by the court on the basis of the policies and objectives underlying the federal securities laws. *See Lampf, et al. v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).[6] It is this court's opinion that the method selected herein should be uniformly applied in all cases in which this issue arises.[7]

### C. *The Parties' Positions*

■ Having identified the governing law, the more difficult issue must be faced: What credit method do those policies and objectives favor? Plaintiffs argue that the *pro tanto* method should be adopted. The nonsettling defendants urge the adoption of a proportionate fault rule in conjunction with implementation of the "one satisfaction rule." In common vernacular, the defendants want to "have their cake and eat it too". None of the parties advocates the use of a pro rata rule.[8]

The thrust of plaintiffs' argument is that the *pro tanto* rule will better encourage the partial settlement of securities actions. Plaintiffs argue that such settlements will eliminate parties and issues, thereby simplifying any trial against the remaining nonsettling defendants. Plaintiffs also argue that the use of the proportionate fault method would permit the nonsettling defendants to try to shift liability at trial to the "empty chairs" left by the settling defendants, causing prejudice to plaintiffs and confusion to the jury.

Defendants respond that the statutory objectives underlying the federal securities laws, punishment and deterrence, are achieved by the apportionment of liability according to culpability. Where no bar order is entered, these objectives are attained through the equitable right of contribution. The nonsettling defendants argue that if that right of contribution is barred to effectuate a plaintiff's partial settlement, a non-

---

**6.** *See also Alvarado Partners, L.P. v. Mehta,* 723 F.Supp. 540, 552 (D.Colo.1989), *appeal dismissed as moot,* 936 F.2d 582 (10th Cir.1991); *Nelson v. Bennett,* 662 F.Supp. 1324, 1338 (E.D.Cal.1987).

**7.** If the court's determination about this matter being one purely of law is found to be erroneous, the court alternatively finds that the method selected herein is the most appropriate under the circumstances of this case due to the limited discovery that has taken place in this case thus far.

**8.** The Court rejects the *pro rata* rule as offering little to further the policies underlying the federal securities laws.

settling defendant must be compensated by a credit method which best replaces the equitable right of contribution being eliminated. The proportionate fault method, they argue, is the only credit method which achieves this objective. The defendants contend that a "fairness hearing" cannot serve as a substitute for a jury's determination on relative culpability, particularly where only limited merits discovery has taken place. The nonsettling defendants further argue that the *pro tanto* method promotes "bad" settlements, because it allows the creation of "war chests" that encourage, not reduce, litigation, and because it allows plaintiffs to target "deep pocket," but less culpable defendants, which exposes nonsettling defendants to liability disproportionate to their culpability. The nonsettling defendants assert that the *pro tanto* method, in reality, will not "simplify" trials or result in any judicial economy.

### D. *The Law Outside This Circuit*

Few courts have grappled with the difficult issue before this Court. In *Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989), *cert. denied sub nom. Franklin v. Peat Marwick Main & Co.*, — U.S. —, 111 S.Ct. 232 (1990), the Court of Appeals for the Ninth Circuit adopted the proportionate fault setoff after a lengthy analysis of the pros and cons of each offset method. The Court ultimately concluded that only the proportionate fault method satisfied the statutory, equitable and policy goals at stake in the settlement of a Rule 10b–5 claim. Various district courts likewise have analyzed and adopted a proportionate fault setoff method. *E.g., Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540 (D.Colo.1989), *appeal dismissed as moot*, 936 F.2d 582 (10th Cir.1991); *In re Sunrise Sec. Litig.*, 698 F.Supp. 1256 (E.D.Pa.1988); *cf. First Federal Savings & Loan Ass'n v. Oppenheim, Appel, Dixon & Co.*, 631 F.Supp. 1029 (S.D.N.Y.1986) (applying N.Y. state law).

Plaintiffs cite two circuit court decisions which they argue have adopted the *pro tanto* credit method. *Singer v. Olympia Brewing Co.*, 878 F.2d 596 (2d Cir.1989), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990); *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223 (10th Cir.1988). Defendants respond that neither of those courts analyzed the policy issues involved in barring contribution claims, or the advantages and disadvantages of the three available credit methods. A careful reading of these cases suggests that there may be merit to defendants' position.

In *Singer v. Olympia Brewing Co.*, 878 F.2d 596 (2d Cir.1989), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990), the Second Circuit applied "the one satisfaction rule, which provides that a plaintiff is entitled to only one satisfaction for each injury." 878 F.2d at 600 (citations omitted). In the *Singer* case, plaintiff recovered a $1,250,000 settlement in a separate related action, two weeks after entry of a judgment in the *Singer* action. The New York District Court amended its earlier judgment to reduce the award by the $1,250,000 settlement amount. No bar order was discussed in *Singer*, and the decision did not address the policy question of what credit method would be required to compensate the nonsettling defendant for the barring of his equitable right to contribution.[9]

Similarly, the Tenth Circuit's decision in *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223 (10th Cir.1988), did not address the credit method required to compensate a nonsettling defendant for a bar order precluding contribution claims. The Court only discussed the "one satisfaction" rule, noting:

> It is a fundamental legal principle that an injured party is ordinarily entitled to only one satisfaction for each injury.... When a plaintiff receives an amount from a settling defendant, therefore, it is normally applied as a credit against the

**9.** *Singer*, in fact, approvingly cited N.Y. Obligation Law 15108, which provides for a propor-

tionate fault setoff. *Id.* at 600.

amount recovered by the plaintiff from a nonsettling defendant. . . .

*Id.* at 1236 (citation omitted). Several district courts, however, have analyzed and adopted the *pro tanto* offset method. *E.g.,* *MFS Mun. Income Trust v. American Medical Int'l, Inc.,* 751 F.Supp. 279 (D.Mass.1990); *Dalton v. Alston & Bird,* 741 F.Supp. 157 (S.D.Ill.1990); *In re Terra–Drill Partnerships Sec. Litig.,* 726 F.Supp. 655 (S.D.Tex.1989); *In re Atlantic Fin. Management, Inc. Sec. Litig.,* 718 F.Supp. 1012 (D.Mass.1988).

### E. *Public Policies Which Guide This Court's Analysis*

The Court's analysis necessarily begins with the public policies that underlie Rule 10b–5. The primary policy embodied by the Congress in the 1934 Securities Act is the punishment and deterrence of securities violations. *See Herman & MacLean v. Huddleston,* 459 U.S. 375, 386–87, 103 S.Ct. 683, 689–90, 74 L.Ed.2d 548 (1983); *cf. Franklin v. Kaypro Corp.,* 884 F.2d at 1227 ("overarching purpose [of securities laws] was to restore confidence in the market," by holding "accountable all parties"). Courts have recognized that promoting compliance with the securities laws is best served when each defendant is held responsible for his actions. *See Smith v. Mulvaney,* 827 F.2d 558, 561 (9th Cir.1987). As plaintiffs have argued to this Court: "In a perfect world, of course, every defendant would actually satisfy its share of a judgment by paying an amount exactly calibrated to that defendant's fault." (Plaintiffs' Mem. at 8.)

The objective of holding each defendant responsible for his actions is normally achieved in Rule 10b–5 actions through the right to contribution, now well-established in this Circuit. *Jiffy Lube,* 927 F.2d at 160. Contribution achieves the objectives of deterrence and punishment by apportioning liability based on each defendant's relative culpability. *Franklin v. Kaypro Corp.,* 884 F.2d at 1226; *Smith v. Mulvaney,* 827 F.2d 558, 561 (9th Cir.1987). Thus, the equitable goal of matching liability with relative culpability plays a key role under

the federal securities laws, and cannot lightly be discarded or overlooked.

There is a third policy, however, which this Court must consider in determining an appropriate credit method, that is judicial policy of promoting the settlement of complex cases. *See Alvarado Partners,* 723 F.Supp. at 551. That policy is not overriding, but must be tempered by, and applied consistently with, the other goals underlying a Rule 10b–5 case. "[W]hile the federal policy of encouraging settlement is important, it does not completely overwhelm the considerations of fairness and deterrence which support a proportional rule." *Sunrise,* 698 F.Supp. at 1261.

The Ninth Circuit Court of Appeals described the three policies at work in a Rule 10b–5 case as: "the statutory goal of punishing each wrongdoer, the equitable goal of limiting liability to relative culpability, and the policy goal of encouraging settlements." *Franklin,* 884 F.2d at 1231.

Courts have recognized that, as a practical matter, these three policies do not always function harmoniously. Most significantly here, a defendant would hardly be willing to settle if it could readily be brought back into the action on a contribution claim. *Jiffy Lube* recognized this conflict and noted that:

"There is a trend toward the imposition of orders barring the exercise of [the contribution] right in partial settlements involving federal securities law. [citations omitted] The justification for imposing a bar to contribution in such settlements is that in multi-defendant actions, the right to contribution removes the incentive to settle. . . ."

927 F.2d at 160. *Jiffy Lube,* however, went on to instruct that "If the nonsettling defendant loses his right to contribution," the Court must "ensure that the nonsettling defendant pays no more than his share of any judgment that may be entered against him in favor of plaintiffs." *Id.* Put differently, if the right to contribution is extinguished by a bar order, the credit offset must adequately compensate the nonsettling defendant for the barring of its contribution claim.

This Court concludes that the policies underlying the federal securities laws are best achieved if the credit method reflects the same objectives as the contribution claim which it replaces. As the Court reasoned in *Alvarado Partners, L.P. v. Mehta,* 723 F.Supp. 540, 553 (D.Colo.1989), *appeal dismissed as moot,* 936 F.2d 582 (10th Cir.1991):

> "[B]ecause contribution is an equitable doctrine, equitable considerations should drive the determination of the form of the settlement contribution bar."

One of the principle virtues of the "proportionate" method lies in its promotion of the policy objectives served by the contribution right which it replaces: *fairness* (by apportioning liability according to fault), and *deterrence* (by insuring that the most culpable parties bear the consequences of their actions). It is the only setoff, as the Ninth Circuit recognized, which satisfies "the statutory goal of punishing each wrongdoer, the equitable goal of limiting liability to relative culpability, and the policy goal of encouraging settlement." *Franklin v. Kaypro Corp.,* 884 F.2d at 1231. *See also Alvarado Partners, L.P. v. Mehta,* 723 F.Supp. 540; *In re Sunrise Sec. Litig.,* 698 F.Supp. 1256 (E.D.Pa.1988). It is also the only method which ensures that defendants are exposed to liability commensurate with their culpability, or, as our Court of Appeals has instructed, "that the nonsettling defendant pays no more than his share of any future judgment." *Jiffy Lube,* 927 F.2d at 160.

### F. Inadequacy of a Fairness Hearing to Satisfy Public Policies

Advocates of the *pro tanto* method argue that this same objective, ensuring that a nonsettling defendant "pays no more than his share of any judgment," may alternatively be achieved by holding a hearing which considers the settlement's fairness to the nonsettling defendants. Courts which have utilized a *pro tanto* offset have

required that such a hearing be held to consider whether a larger judgment would be collectible, the strength of the plaintiff's case, the relative culpability of the settling and nonsettling defendants, and the Court's participation in the settlement process. *See, e.g., In re Atlantic Fin. Management Sec. Litig.,* 718 F.Supp. 1012, 1017 (D.Mass.1988); *Kirkorian v. Borelli,* 695 F.Supp. 446 (N.D.Cal.1988) (applying California state law), superseded, *Franklin v. Kaypro Corp.,* 884 F.2d 1222 (9th Cir. 1989). In *Atlantic Financial,* the Court noted that the most important factor to be considered is the strength of the plaintiffs' proof of liability. 718 F.Supp. at 1021. *Jiffy Lube* acknowledged that such a hearing must be held if the *pro tanto* method is selected. *Id.* at 160, n. 3.

The problem with the use of the "fairness hearing" as a substitute for a jury's determination of relative culpability is that two of the elements which the Court must consider, the strength of the plaintiff's case and the relative culpability of the parties, go to the core of the plaintiff's action.[10] Unless virtually all discovery has been completed, neither the nonsettling defendants, the plaintiffs, nor the Court is in a position to adequately assess the relative merits of the plaintiff's case against each of the various defendants. This Court takes note of the teaching in *Jiffy Lube* "that a reasonable judgment on the possible merits of the case is best achieved when all discovery has been completed and the case is ready for trial." *Jiffy Lube,* 927 F.2d at 159.

Not surprisingly, every court which has adopted the *pro tanto* method did so after virtually all discovery was completed. *See, e.g., MFS Mun. Income Trust v. American Medical Int'l, Inc.,* 751 F.Supp. 279 (D.Mass.1990) (Skinner, J.); *In re Atlantic Fin. Management. Inc. Sec. Litig.,* 718 F.Supp. 1012 (D.Mass.1988) (Skinner, J.); *In re Terra–Drill Partnerships Sec. Litig.,* 726 F.Supp. 655 (S.D.Tex.1989) (rule

---

**10.** If a defendant has a right to have a jury determine the amount of contribution he may recover based on relative culpability, it is not clear that a court may eliminate that jury right

with a "fairness hearing" before the Court. See *In re MGM Grand Hotel Fire Litigation,* 570 F.Supp. 913, 927 (D.Nev.1983).

adopted after trial); *Dalton v. Alston & Bird,* 741 F.Supp. 157 (S.D.Ill.1990).[11]

Adoption of the *pro tanto* method in a case where the contrary is true, where little or no discovery has been taken, would place the Court in the untenable position of trying to assess the merits without an adequate record. One can easily envision the due process problems that might arise should a court approve a settlement as adequately reflecting a settling defendant's relative culpability, only to later learn, as discovery proceeds, that overwhelming evidence exists showing the error of that decision.

Plaintiffs candidly acknowledge the need for adequate merits discovery before any fairness hearing occurs, but suggest that such discovery can be completed within 60–90 days. In a complex securities action with multiple defendants, a three-month period for discovery is not realistic. "[T]he spirit of the rules does not require that completeness in the exposure of the issues in the pretrial discovery proceedings be sacrificed to speed in reaching the ultimate trial on the merits." *Freehill v. Lewis,* 355 F.2d 46, 48 (4th Cir.1966). Serious due process problems are therefore raised by trying to expedite all merits discovery simply to hold a fairness hearing. *See In re Bankers Trust Co.,* 752 F.2d 874, 886, 890 (3d Cir.1984) (due process violated when Court denied permission to take testimony in challenge to settlement); *see also In re Singh,* 123 F.R.D. 108, 126 (D.N.J.1987) ("there may be circumstances under which *specific* discovery must be afforded as a matter of due process") (emphasis added).

The Development Authority also candidly agreed with the nonsettling defendants at oral argument that neither discovery nor the fairness hearing should be conducted in a cursory fashion. How much discovery, however, is enough to ensure that the hearing will truly be fair to the nonsettling defendants? How can the Court assess which witness may reveal information that

materially affects the allocation of relative culpability? What if facts arise after the hearing which unequivocally demonstrate that the settlement is not fair to the non-settling defendants? These questions have no ready answers.

This Court accordingly concludes that in the case where only limited discovery has occurred, a fairness hearing cannot be relied upon to ensure that each nonsettling defendant will receive adequate compensation for the order barring its equitable right to contribution. Put differently, where little or no discovery has occurred, the Court has no basis for ensuring, as this Circuit mandates, "that the nonsettling defendant pays no more than his share of any future judgment." *Jiffy Lube,* 927 F.2d at 160. Nevertheless, the Court acknowledges that this issue alone is insufficient to mandate the adoption of a uniform proportionate rule inasmuch as the problem with discovery being incomplete in a *pro tanto* situation may be rendered moot by simply deferring the fairness hearing until such discovery is complete. Therefore, it appears that the primary focus is on the fair treatment of the nonsettling defendants who must relinquish rights of contribution when a bar order is imposed.

Adoption of a proportionate fault rule would eliminate all of these problems, by eliminating the need for a fairness hearing for the nonsettling defendants and by returning the issue of relative culpability where it belongs, with the jury. *In re Sunrise,* 698 F.Supp. at 1260. Adoption of a proportionate fault setoff would also allow the class to expeditiously receive the proceeds of its partial settlement[12], while at the same time protecting the nonsettling defendants' rights.

There is another problem which counsels against the fairness hearing required by the *pro tanto* method no matter when it occurs during the discovery process. As other courts have recognized, such a hear-

11. *In South Carolina Nat'l Bank v. Stone,* Civ. No. 7:88–791 (D.S.C. August 19, 1991), Judge Joe Anderson utilized the *pro tanto* method. However, all discovery had been completed in that case.

12. Of course, a fairness hearing for the class plaintiffs is required by either method of credit selected.

ing would burden the Court and the parties with an additional proceeding to determine what may ultimately, more precisely, and more efficiently be determined at the non-settling defendants' trial. As the Ninth Circuit explained in *Kaypro:*

> A good faith hearing 'means bogging down the settlement process in a miniature trial before trial.' [citation omitted] In order to be truly efficacious, the good faith hearing would require a full evidentiary hearing on all of the parties' relative culpabilities. This would negate many of the benefits of settlement.

884 F.2d at 1230. As the Court in *Alvarado* similarly noted:

> This procedure, if too modest or streamlined, undermines the protective cloak of judicial review of settlement fairness that is the basis for adoption of a settlement contribution bar in the first place, while judicial involvement adequate to assure fair settlements inevitably reduces the efficiency of the pro tanto rule.

723 F.Supp. at 553.

Thus, even where substantial discovery has occurred, this Court believes that the proportionate fault credit method better effectuates the public policies behind Rule 10b–5.

## G. *The Possibility of More Settlements Does Not Outweigh Other Policy Considerations*

Assuming, *arguendo*, as the plaintiffs insist, that the *pro tanto* method will promote more settlements than a proportionate fault rule, the Court must also ensure that the partial settlements being encouraged are of a type that actually promote judicial economy. Settlements which do not further judicial economy serve no public purpose. *See Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir.1983) (Court "should strike the proper balance between the policy consideration of encouraging voluntary resolutions of litigation and the Court's duty to protect the rights of the parties before it"). The elimination of a key defendant, as a practical matter, may do little to shorten the length of a trial if that defendant's conduct touches virtual-

ly every aspect of the case, or if the same issues will remain for the jury's determination. Thus, in assessing the goal of promoting settlements, the Court cannot lose sight of the type of settlement being promoted.

Other courts have recognized that the *pro tanto* method gives a plaintiff the power to select the defendant it wishes to pursue, while insulating the settling defendant (who may be the most culpable) from contribution claims. This allows plaintiffs to target deep-pocket defendants, and fund such litigation through "war chests" created by settlements with more culpable parties purportedly unable to pay their fair share of damages. *See Franklin v. Kaypro*, 884 F.2d at 1230; *In re Sunrise Sec. Litig.*, 698 F.Supp. at 1259 n. 5 (E.D.Pa. 1988) ("Indeed, it is arguable that the only settlements the *pro tanto* rule would promote would be bad settlements, *i.e.* those in which settling defendants pay less than their share of liability"). If the *pro tanto* method actually encourages such settlements, it may ultimately prolong, not shorten, pending litigation and only further aggravate the burden facing federal courts.

Even if the *pro tanto* rule were to better promote settlements, the Court's analysis cannot end there. To the extent there is tension between the goal of promoting settlements and fundamental fairness to litigants, the latter must prevail. As the Court in *In re Sunrise* explained,

> while the federal policy of encouraging settlement is important, it does not completely overwhelm the considerations of fairness and deterrence which support a proportionate rule.

698 F.Supp. at 1261. The court in *Alvarado* put it this way:

> Preservation of judicial resources is an important consideration. However, it should not be the sole, or even overriding factor. Ultimately the role of the judiciary and the trial process is to fairly assess culpability in determining the outcome of litigation.

723 F.Supp. at 553. The court in *Alvarado* concluded that "the *pro tanto* rule, while promoting expedient settlements, does so

at the expense of equitable considerations." *Alvarado*, 723 F.Supp. at 553.

This Court must also be mindful of the allocation of risks in the settlement process. The *pro tanto* method exposes nonsettling defendants to liability which exceeds their culpability. *Jiffy Lube*, 927 F.2d at 160–61. By placing the risk of an inadequate settlement on the party who did not participate in it—(*i.e.*, the nonsettling defendant)—the *pro tanto* rule may achieve its simplicity at the cost of fundamental fairness. *In re Sunrise*, 698 F.Supp. at 1259; *see Nelson v. Bennett*, 662 F.Supp. 1324, 1338 (E.D.Cal.1987) (permitting bar order "only when said settlement is ... fundamentally fair and equitable"); *id.* at 1339 n. 24 ("Under the *pro tanto* method, this risk is borne by the nonsettling defendants").

Under the pure comparative or proportionate fault rule, the risk may fall on the plaintiff, the party structuring, and probably best able to evaluate, the settlement. As *Jiffy Lube* instructs, "Here, the plaintiffs bear the risk of a 'bad' settlement and thus have incentive to obtain a settlement accurately apportioned according to fault." *Jiffy Lube*, 927 F.2d at 160 n. 3. However, the pure comparative fault rule also presents a risk of a "bad" settlement to the nonsettling defendants, when the money received by the plaintiffs in settlement exceeds the liability established for the settling parties. The fact that the plaintiffs and nonsettling defendants each bear some risks, as all parties engaging in litigation face, is especially appealing to this court as being equitable and fair. By encouraging settlements that achieve fairness and deterrence by more accurately apportioning liability according to fault, the proportionate fault setoff may promote more encompassing settlements that achieve real judicial economy.

The court also finds that the pure proportionate or comparative fault method does not violate the "one satisfaction" rule. It is well-settled that an injured party is entitled to only "one satisfaction" for each injury. *See, e.g., MacKethan v. Burrus, Cootes & Burrus*, 545 F.2d 1388, 1390 (4th Cir.1976), *cert. denied*, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977); *see also U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1236 (10th Cir.1988) (" 'One satisfaction rule' cannot be disputed. It is a fundamental legal principle...."); *Harris v. Union Elec. Co.*, 846 F.2d 482, 485 (8th Cir.1988) ("an injured party is entitled to only one satisfaction for each injury.... [T]he injured party may only recover once"); *Ratner v. Sioux Natural Gas Corp.*, 719 F.2d 801, 804 (5th Cir.1983) ("The purpose of the rule is to ensure that a plaintiff receives no more than full compensation for his loss"). However, the court concludes that the pure proportionate or comparative fault method does not violate the "one satisfaction" rule. This court agrees with the reasoning of the Ninth Circuit Court of Appeals which stated [13] that:

The one satisfaction rule provides that a plaintiff is only entitled to one satisfaction for any given injury. The Second Circuit paints this scenario; plaintiffs settle with some defendants for a large sum, at trial the nonsettling defendants are found to be primarily responsible for the damage and are required to pay a large sum, and plaintiffs end up with more money than they would have received if all parties had gone to trial. This, argues the Second Circuit, violates the one satisfaction rule.

In the first place, we do not believe that the plaintiffs in the above scenario have received more than one satisfaction for the same injury. All of the defendants are required to contribute, none pay the entire damages. The plaintiffs are merely receiving more money than they might have in different circumstances. If all of the defendants had settled for a sum larger than the trial verdict, the one satisfaction rule would not be violated.

---

**13.** The quotation refers to the Second Circuit decision in *Singer v. Olympia Brewing Co.*, 878 F.2d 596 (2nd Cir.1989).

There is little conceptual difference between that and only some of the defendants settling for a larger amount.

*Franklin,* 884 F.2d at 1231–1232.[14]

The Court also is not persuaded by plaintiffs' argument that the proportionate fault rule should be rejected because it invites the nonsettling defendant to try to shift blame at trial to the "empty chair" left by the settling defendants. As other courts have recognized:

> Under either rule, the nonsettling defendants have every incentive to minimize their liability by arguing at trial that the settling defendants were at fault.

*In re Sunrise,* 698 F.Supp. at .1260.

▆▆ In conclusion, this Court adopts the pure proportionate or comparative fault rule as the settlement bar rule to be applied to the claims in this case. Accordingly, the set-off herein shall be in the amount of the settlors' share of fault, regardless of the settlement amount. The court will, in approving the settlement, ascertain whether the settlement was entered in good faith. The settlors' share (percentage of culpability) will be determined at trial and the nonsettling defendants must pay their proportionate share of any verdict regardless of whether the settling parties overpaid or underpaid. Consequently, if the settling defendants overpay, the plaintiffs may collect more than the total judgment at trial. See *MFS Mun. Income Trust,* 751 F.Supp. at 282. Similarly, if the settling defendants underpay, the plaintiffs will bear the risk of the settlement and may recover less than the total judgment at trial once the proportionate set-off is applied.

As this court is of the opinion that this order involves a controlling question of law as to which there is a substantial ground for a difference of opinion, and that an immediate appeal from this order will materially advance the ultimate termination of this litigation, it is

ORDERED, that any plaintiff or defendant is granted leave to file an immediate appeal of this order to the Fourth Circuit Court of Appeals under 28 U.S.C. § 1292(b), and

IT IS FURTHER ORDERED, that all proceedings in this case are stayed, unless this court hereafter orders otherwise, pending timely action on any petition by any party to the Fourth Circuit Court of Appeals for permission to take an immediate appeal from this order, and thereafter, until further order of the Fourth Circuit Court of Appeals, should it allow an immediate appeal herein.

IT IS SO ORDERED.

---

**14.** The Ninth Circuit further adopted what this court feels is a salutary principle in connection with the one satisfaction rule in holding in *Franklin* the following: "It is not entirely clear that the one satisfaction rule applies in these circumstances. The rule is based in common law; it is not statutorily mandated. *U.S. Industries,* 854 F.2d at 1236. Contribution, on the other hand, is a statutory deviation from the common law. *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 634, 101 S.Ct. 2061, 2063, 68 L.Ed.2d 500 (1981). We are not convinced that the efficient and equitable administration of this statutorily mandated right must yield to the logic of a general rule." *Franklin,* 884 F.2d at 1232.

As discussed by this court in its opinion in *Doyle v. U.S.,* 441 F.Supp. 701, 713 (D.S.C.1977), this court is not entirely confident that the Fourth Circuit case of *MacKethan v. Burrus,* 545 F.2d 1388 (4th Cir.1976) is in conflict with the holding in *Kaypro* negating the application of the one satisfaction rule under the facts of the instant case. A close reading of *MacKethan,* at page 1391, indicates to this court that, when presented with the situation faced here, the Fourth Circuit Court of Appeals might very well follow the logic on the applicability of the one satisfaction rule as set forth in *Franklin* quoted in this footnote.