RESOLUTION TRUST CORPORATION,
Plaintiff,

v.

Francis X. GALLAGHER, Vincent J. Gavin, John J. Gill, John W. Gilluly, Gordon A. Groebe, Joseph M. Heidecker, Lawrence Klinger, Louis J. Kole, Gary K. Kummer, Matthew J. Lamb, H. Richard Landis, Edward A. Long, and Milton Meyers, Defendants.

No. 92 C 1091.

United States District Court,
N.D. Illinois,
E.D.

Feb. 10, 1993.

Alan Francis Curley, Fay Clayton, Steven A. Ramirez, Robinson, Curley & Clayton, P.C., Stephen Novack, Timothy John Miller, Novack & Macey, Chicago, IL, for Resolution Trust Corp.

Sean Malone Sullivan, Ross & Hardies, P.C., Chicago, IL, for Francis X. Gallagher.

Gordon B. Nash, Jr., Gardner, Carton & Douglas, Chicago, IL, for Vincent J. Gavin.

Edmund Patrick Burke, Thomas M. Lake, Burke & Burke, Ltd., Chicago, IL, for John J. Gill.

George W. Groble, Donald G. Groble, Groble & Groble Ltd., Chicago, IL, for John W. Gilluly.

Michael D. Walsh, Gierach, Schussler & Walsh, Ltd., Oak Lawn, IL, for Gordon A. Groebe.

Locke E. Bowman, III, Niles, IL, Daniel Thomas Hartnett, Martin, Brown, Sullivan & Bowman, Chicago, IL, Royal B. Martin, Jr., Martin, Brown, Sullivan & Bowman, Ltd., Chicago, IL, for Joseph M. Heidecker.

Susan Bogart, Chicago, IL, for Lawrence Klinger.

John Joseph Reidy, Edward P. Freud, Dean J. McElroy, Ruff, Weidenaar & Reidy, Ltd., Chicago, IL, for Louis J. Kole.

Donald L. Mrozek, John Joseph Foran, Peter D. Sullivan, Hinshaw & Culbertson, Chicago, IL, Daniel M. Purdom, Hinshaw & Culbertson, Lisle, IL, for Gary K. Kummer.

Michael J. O'Rourke, Robert Walter Tarun, Jack J. Crowe, Bruce Roger Braun, Winston & Strawn, Chicago, IL, for Matthew J. Lamb, H. Richard Landis.

George Patrick Lynch, Downers Grove, IL, for Edward A. Long.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the Court pursuant to plaintiff's request that the Court rule on the issue of whether damages in this case should be apportioned on a pro tanto or on a comparative fault basis. For the reasons set forth below, we determine that the comparative fault settlement bar rule should apply.

## BACKGROUND

This action is being pursued by plaintiff, Resolution Trust Corporation ("RTC"), against the above-named defendants, who are the former directors and officers of Concordia Federal Bank of Savings ("Concordia") and its wholly owned subsidiary, Concor Financial Services, Inc. ("Concor"). RTC seeks recovery for the negligence, gross negligence, breach of fiduciary duty, and other wrongful and improper conduct allegedly committed by defendants in their positions as directors and officers of Concordia and Concor.

The parties have submitted memoranda before the Court stating their positions on whether a settlement bar rule should be imposed in the present case and on the nature of the parties' preferred bar rule. Most of the named defendants, including John Gill, John Gilluly, Gordon A. Groebe, Lawrence Klinger, Louis J. Kole, Matthew J. Lamb, H. Richard Landis, Edward Long, advocate the Court's adoption of the comparative fault settlement bar rule. The RTC, in contrast, advances the pro tanto settlement bar rule.

■ The purpose behind the Court issuing a ruling on the instant issue is to facilitate the parties' good faith settlement discussions. Although RTC now objects to the present resolution of the pro tanto versus comparative fault dispute on the basis of its contentions that no implied or federal common law right of contribution exists in this case, we find no basis for RTC's objections at the present time. Our resolution of the settlement bar rule is necessary regardless of whether the defendants have a right to seek contribution from one another, because the parties cannot evaluate the effect of individual settlements on RTC and the remaining nonsettling defendants until this Court has determined whether the pro tanto or comparative fault rule applies. We will discuss the two contended settlement bar rules below, but first the Court must address which law—federal common law or state law—to apply to the federal claims in this case.

## DISCUSSION

I. Adoption of a Federal Common Law Settlement Bar Rule

The parties do not dispute that a settlement bar rule of some kind will best advance the interests at stake and facilitate settlement negotiations.[1] What remains to be determined, however, is the form the said settlement bar rule should take.

---

1. Courts agree that the whole purpose of a settlement bar rule of whatever sort is to harmonize the equitable objectives of contribution with the encouragement of settlement. *See e.g., Nelson v. Bennett,* 662 F.Supp. 1324, 1335 (E.D.Cal.1987); *First Federal Savings & Loan Asso. v. Oppenheim, Appel, Dixon & Co.,* 631 F.Supp. 1029, 1035–36 (S.D.N.Y.1986).

As set forth in our prior Memorandum Opinion, we recognize that federal law governs the determination of the rights of the RTC in the present action. Because 12 U.S.C. § 1821(k), the applicable federal statute, does not prescribe a settlement bar rule, this Court may, as a matter of federal common law, either adopt the prevailing state statute as the federal rule of decision or, alternatively, fashion a uniform federal rule. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979); *see also FSLIC v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C.*, 808 F.Supp. 1263, 1276 (M.D.La.1992); *Nelson*, 662 F.Supp. at 1335.

As stated by the Supreme Court in *Kimbell Foods*, in choosing between these two alternatives, the need for a nationally uniform body of law must be balanced against the advantages of utilizing the state statute. 440 U.S. at 728, 99 S.Ct. at 1458. Courts have generally found national uniformity of rules desirable in litigation involving RTC's counterpart, the Federal Deposit Insurance Corporation ("FDIC"). *See McGinnis*, 808 F.Supp. at 1277 ("Congress has left little doubt that uniformity of standards governing the regulation of banks and the federal bank insurance system is to be the rule, rather than the exception").

The *Nelson* court identified three compelling reasons why a uniform national rule would be necessary in the context of a settlement bar rule, reasons that are applicable to the present RTC-initiated suit despite the fact that *Nelson* involved federal securities claims. *Nelson*, 662 F.Supp. at 1336–37. First, a settlement bar rule defines and limits the defendants' substantive rights, here, the right of contribution. *Id.; see also Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540, 551 (D.Colo.1989). Second, adoption of prevailing state settlement bar statutes would lead to widely disparate results, which in an area affecting substantive federal rights would be manifestly unfair and would thwart the overall federal regulatory scheme. *Alvarado*, 723 F.Supp. at 552; *Nelson*, 662

F.Supp. at 1337. Third, adoption of state settlement bar statutes would create numerous practical problems, including forum shopping and wasteful conflicts of law litigation generated to determine which state's settlement bar statute applies. *Id.*

On the other hand, as contended by RTC, our adoption of the Illinois state statute [2] as the federal rule of decision avoids the potential practical difficulties in a case such as this where different settlement bar standards could apply to federal and pendent state claims. We held in a prior ruling that RTC could bring federal claims against Concordia's directors pursuant to 12 U.S.C. § 1821(k) and could bring Illinois common law claims against Concor. RTC contends, in light of this ruling, that the Court should adopt the Illinois settlement bar rule in creating a federal common law settlement bar rule in order to avoid the administrative problems inherent in the application of a comparative fault rule to RTC's federal clams and the application of the Illinois rule to RTC's state claims.

In response, the defendants argue that adopting state law as the federal rule of decision will not result in administrative convenience because, as RTC's complaint makes clear, the state law claims against the Concor directors and the federal law claims against the Concordia directors are legally and factually distinct. According to the defendants, given the defendants' differences in tenure, differences in responsibility among and between the Concordia and Concor directors, and the different duties imposed by law on each, RTC's contention that its claims relating to the two institutions involve the same conduct is baseless. The defendants further contend that the adoption of the state law as the federal rule of decision will not obviate the need to apportion any settlement monies between the state and federal claims; under either a pro tanto or comparative fault approach, the trier of fact will be required to evaluate the defendants' comparative fault and to divide any judgment accordingly.

**2.** Illinois, by statute, applies a pro tanto settlement bar rule, under which a "good faith" settlement reduces a judgment entered against a nonsettling defendant by the greater of the amount stated in the settlement agreement or the amount actually paid in settlement. *See* Ill.Rev.Stat. ch. 740, 100/2(c) (Smith–Hurd 1992).

■ Upon balancing all of the above considerations, this Court concludes that the need for a nationally uniform body of law far outweighs the advantages of utilizing the state statute in order to preserve a uniform rule for both the federal and state claims in this case. Thus, a uniform federal settlement bar rule, rather than the Illinois settlement bar statute, will govern the RTC's federal claims against the defendants. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1228 (9th Cir.1989); *Alvarado*, 723 F.Supp. at 552; *In re Sunrise Secur. Litigation*, 698 F.Supp. 1256, 1258 (E.D.Pa.1988); *Nelson*, 662 F.Supp. at 1338.

## II. Pro Tanto Rule Versus Comparative Fault Rule

■ Having decided that a uniform federal settlement contribution bar governs the federal claims in the present case, we turn to the form the uniform federal settlement bar rule should take. The defendants and RTC present two different viewpoints: RTC urges the adoption of a pro tanto rule while the defendants advocate a comparative fault rule. For the reasons discussed below, we conclude that the comparative fault rule will be the federal settlement contribution bar rule governing this case. Before discussing the basis for our present determination, we first will provide a brief overview of the two rules in contention.

### A. Pro Tanto Rule

■ Under the pro tanto rule, any judgment against non-settling defendants is reduced pro tanto, that is, by the amount actually paid in settlement by settling defendants. *Alvarado*, 723 F.Supp. at 552. For example, if plaintiff is paid $30,000 in settlement by defendant A and then obtains a judgment against defendant B for $100,000, defendant B would be required to pay $70,000 and would have no recourse against defendant A. *Id.* The pro tanto method is particularly advantageous to plaintiffs because it permits them to recover all of their losses, without regard to the relative fault of the various defendants. *In re NBW Commercial Paper Litigation*, 807 F.Supp. 801 (D.C.Col.1992.) Because this method thereby exposes the non-settling defendant to liability for any deficiency in the judgment, a hearing focusing on fairness of the settlement to the non-settling defendant is required for approval. *In re Jiffy Lube Secur. Litigation*, 927 F.2d 155, 160 n. 3 (4th Cir. 1991).

### B. Comparative Fault Rule

The rule termed by the Seventh Circuit, the "comparative fault rule," provides that any judgment against the remaining defendants is reduced by the settling defendant's share of plaintiff's damages. *See Donovan v. Robbins*, 752 F.2d 1170, 1180–81 (7th Cir. 1985). As illustrated by the *Alvarado* court, 723 F.Supp. at 552, if plaintiff settles with defendant A for $30,000 and obtains a judgment against B for $100,000, and it is determined at trial based on proportionate fault that defendant A's appropriate share of total damages is $50,000, plaintiff's judgment against defendant B would be reduced by $50,000. Plaintiff would thus receive a total of $80,000. Under this approach, the plaintiff bears the risk of a "bad" settlement and thus has the incentive to obtain a settlement accurately apportioned according to fault. *In re Jiffy Lube Secur. Litigation*, 927 F.2d at 155. While the comparative fault rule is equitable in that, early on, it forces the parties to address degrees of culpability in apportioning damages, this rule necessarily delays the final determination of the amount of setoff. *Id.*

### C. Analysis

RTC contends that the pro tanto rule is the dominant rule in FDIC–RTC litigation, primarily relying upon the district court opinion in *FDIC v. Geldermann*, 763 F.Supp. 524, 529 (W.D.Okla.1990). In *Geldermann*, the court's determination to apply the pro tanto bar rule in the context of FDIC bank officer litigation was guided by the following policy concerns,

[I]n bank officer litigation, there is a public interest in making the FDIC as whole as possible. There is a compelling federal interest in the FDIC maintaining the integrity of its insurance fund in order to prevent the federal treasury from having

to shoulder the burden of an inadequate fund.

However, we find that RTC's reliance on *Geldermann* rests on shaky ground in view of *Geldermann's* treatment on review. The Tenth Circuit, in discussing the district court's choice of the pro tanto rule, stated, "whether a special pro tanto rule should be established for the FDIC presents some very difficult legal questions," citing to that portion of the *Alvarado* decision where the court rejected the pro tanto rule as inequitable and inefficient in its requirement of a complex fairness hearing. *FDIC v. Geldermann, Inc.*, 975 F.2d 695, 699 (10th Cir.1992) (*citing Alvarado*, 723 F.Supp. at 550–53).

While not disputing that RTC-initiated director liability litigation involves a number of special policy concerns, we reject RTC's assertion that the policy goal of making the RTC whole trumps all other concerns, including those of fairness and feasibility. Indeed, it is in view of equitable and administrative considerations that we adopt the comparative fault settlement bar rule in the present case.

As stated above, a pro tanto settlement bar rule requires a hearing focusing on the fairness of the settlement to the non-settling defendant. According to RTC, if a pro tanto rule is adopted, a fairness hearing sufficient to protect the equitable and due process interests of nonsettling defendants need not be extensive and need only focus on whether a settlement is collusive. Yet, RTC cites no case in which a court has adopted such a limited and potentially unconstitutional fairness hearing, nor can it. To the contrary, courts emphasize the need for an extensive fairness hearing. *See Franklin*, 884 F.2d at 1230 (ruling "[i]n order to be truly efficacious, the good faith hearing would require a full evidentiary hearing on all of the parties' relative culpabilities"); *United States Fidelity & Guaranty Co. v. Patriot's Point Development Authority*, 772 F.Supp. 1565, 1573 (D.S.C.1991) (noting "[c]ourts which have utilized a pro tanto offset have required that

such a hearing be held to consider whether a larger judgment would be collectible, the strength of the plaintiff's case, the relative culpability of the settling and nonsettling defendants, and the Court's participation in the settlement process"); *In re Atlantic Fin. Management, Inc. Secur. Litigation*, 718 F.Supp. 1012, 1021 (D.Mass.1988) (ruling that the most important factor to be considered in a fairness hearing is the strength of the plaintiffs' proof of liability). In accordance, the Seventh Circuit, in *Donovan*,[3] discussed the requisite scope and inherent problems associated with the fairness inquiry:

> it means bogging down the settlement process in a miniature trial before trial, for "in determining good faith the court could consider the risk of victory or defeat, the risk of a high or low verdict, the unknown strengths or weaknesses of the opponent's case, the inexact appraisal as to the elements of danger, the defendant's solvency and the amount of insurance coverage." (citation omitted). The fairness hearing makes the settlement process more costly; and as the costs of settlement rise closer to those of trial, the likelihood of settlement falls

. . . . .

Mindful of these principles regarding fairness hearings, we determine that the comparative fault rule, not the pro tanto rule, will best promote settlement of this case. Because of the need for an extensive fairness hearing in which this Court and the parties can evaluate the merits of a particular settlement agreement, settlement cannot occur under a pro tanto regime until the close of discovery. However, discovery has just begun in this complex, multi-defendant case, and the defendants claim that discovery may take up to two years to complete. "Unless virtually all discovery has been completed, neither the nonsettling defendants, the plaintiffs, nor the Court is in a position to adequately assess the relative merits of the

---

**3.** RTC argues that the *Donovan* court "did not even address the pro tanto rule," but the Court finds this argument disingenuous. Judge Posner discussed the pro tanto method by reference to the "settlement bar rule," as evident, for example, in his noting the settlement bar rule's similarity to Illinois' contribution statute, which applies a pro tanto settlement bar rule. 752 F.2d at 1180. Accordingly, we determine that Judge Posner's criticism of the settlement bar rule's fairness hearing as inequitable and economically unsound applies fully to the pro tanto rule. *Id.*

**1112**

plaintiff's case against each of the various defendants." *Patriot's Point,* 772 F.Supp. at 1573. In fact, every court which has adopted the pro tanto method did so only after most discovery was completed. *See, e.g., MFS Mun. Income Trust v. American Medical Int'l, Inc.,* 751 F.Supp. 279 (D.Mass.1990); *Dalton v. Alston & Bird,* 741 F.Supp. 157 (S.D.Ill.1990); *In re Terra-Drill Partnerships Sec. Litig.,* 726 F.Supp. 655 (S.D.Tex. 1989).

Thus, our adoption of the pro tanto method in this case, where nearly no discovery has taken place, would significantly postpone settlement. Until the facts of the case have been fully investigated and the parties have substantial information from which to evaluate their respective positions and potential liabilities, a fairness hearing under the pro tanto rule would be premature. An early hearing in this case would place the Court in the untenable position of trying to assess the defendants' culpability and the suit's merit without an adequate record. As recognized in *Patriot's Point,* one can easily envision the due process problems that might arise should a court approve a settlement as adequately reflecting a settling defendant's relative culpability, only to later learn as discovery proceeds, that overwhelming evidence exists showing the error of that decision. 772 F.Supp. at 1574. The only Court of Appeals that has addressed this issue in the RTC-initiated director liability context articulated similar concerns about the pro tanto approach's fairness hearings, which "tend to be abbreviated, imprecise, and lacking in the constitutional safeguards provided by a full and adversarial trial." *Geldermann,* 975 F.2d at 699. The recent *In re VMS Limited Partnership Secur. Litigation* decision holds likewise:

> In the circumstances of this case, this Court found that the rule of proportionate fault [i.e. comparative fault] would save the cost and effort of an extensive pretrial hearing to determine each defendant's relative culpability before approving the settlement between plaintiffs and some defendants. Moreover, there is a very real risk that an early hearing would be inadequate because the claims and defenses—the facts of the case—would not have been fully

investigated. Thus, an error in assessing comparative fault is more likely at an early stage.

1992 WL 249594, *18, 1992 U.S. Dist. LEXIS 14,512, *1 (N.D.Ill. Dec. 4, 1992).

As stated by the Seventh Circuit in *Donovan,* the Court's adoption of a comparative fault rule would provide a "neat solution" to these problems. Not only does it encourage settlement by immunizing the settling defendant from liability for contribution, but the comparative fault rule eliminates the need for a fairness hearing for the nonsettling defendants and leaves it to the jury to resolve the issue of the defendants' relative culpability. 752 F.2d at 1181; *see also Patriot's Point,* 772 F.Supp. at 1575; *In re Sunrise Secur. Litigation,* 698 F.Supp. at 1260.

## CONCLUSION

For the foregoing reasons, the Court will adopt the comparative fault rule as the federal settlement contribution bar governing the federal claims in the present action.