In re DEL–VAL FINANCIAL CORP.
SECURITIES LITIGATION.

This Document Relates To All Actions.

Master No. MDL 872.

United States District Court,
S.D. New York.

Nov. 10, 1994.

Kaplan, Kilsheimer & Fox (Robert N. Kaplan, Frederic S. Fox, Ariana J. Tadler, of counsel), and Lowey, Dannenberg Bemporad & Selinger, P.C. (William R. Weinstein, Richard B. Dannenberg, of counsel), New York City, for plaintiffs.

Proskauer Rose Goetz & Mendelsohn, New York City (Richard L. Spinogatti, of counsel), for defendant Deloitte & Touche.

Miller Faucher Chertow, Cafferty and Wexler, Chicago, IL (Marvin A. Miller, of counsel), and Ross & Hardies, New York City (Kenneth Zuckerbrot, of counsel), for defendants Del–Val Financial Corp., Kenbee Management, Inc., Herbert L. Golden, Bernard M. Katz, Estate of Stuart T. Parson, Ben S. Read, Jr., Myron Rosenberg, Frederick E. Smithline, James Goldstein, Joel Zbar and Roger Stern.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Certain defendants in this complex securities fraud class action have made cross-motions for summary judgment on their respective cross-claims for contribution and indemnification. For the reasons set forth below, Settling Defendants' motion for summary judgment is granted, while Deloitte & Touche's motion for summary judgment is granted in part and denied in part.

1. The Complaint alleges that Roger D. Stern was President, CEO, and a director of Del–Val and Kenbee. Martin Wright was Chairman of the Board and a director of Del–Val, as well as Chairman of the Board, Vice President, and a director of Kenbee. Herbert L. Golden, Bernard M. Katz, Frederick E. Smithline, and Stuart T. Parson were directors of Del–Val. Ben S. Read, Jr., was a director of Del–Val and a Senior Vice President of Interstate/Johnson Lane. Myron Rosenberg was a director of Del–Val and a paid consultant to Kenbee. James Goldstein was Executive Vice President of Del–Val, its principal

## BACKGROUND

The underlying action in this case was brought by purchasers or owners of shares of stock in Del–Val Financial Corp. ("Del–Val") against Del–Val (a real estate investment trust), Kenbee Management Inc. ("Kenbee") (Del–Val's investment manager), former Del–Val and Kenbee officers and directors (collectively, the "Individual Defendants"),[1] Interstate/Johnson Lane ("IJL") (Del–Val's underwriter), and Deloitte & Touche ("D & T") (Del–Val's independent auditor). The Consolidated Amended Class Action Complaint (the "Complaint"), dated May 6, 1991, alleges claims on behalf of the class of persons who purchased Del–Val common stock during the period from March 30, 1989 through October 19, 1990. Certain plaintiffs also have brought claims as representatives of subclasses of purchasers of Del–Val common stock in August 1989 and May 1990 stock offerings made by Del–Val.

The action arises out of alleged violations of Sections 11, 12(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(2), 77o (1988); Sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t (1988); and the common law.[2] The Complaint alleges that during the class period, the defendants caused or permitted Del–Val to issue and sell, pursuant to public offerings in August 1989 and May 1990, at least $50 million worth of Del–Val common stock to the investing public by means of materially false and misleading registration statements and prospectuses.

On July 12, 1991, D & T answered the complaint and denied all allegations of wrongdoing. D & T also asserted cross-claims for contribution against Del–Val, Kenbee and the Individual Defendants, in the event that Plaintiffs obtained a judgment

financial officer, and Executive Vice President of Kenbee. Joel Zbar was Treasurer of Del–Val, its principal accounting officer, and Treasurer of Kenbee.

2. The common law causes of action are fraud and negligent misrepresentation against all of the defendants; breach of fiduciary duty, negligence, and waste against all of the Individual Defendants; and misappropriation of assets against Stern and Wright.

550

against D & T. On August 12, 1991, Del–Val and its outside directors[3] answered D & T's cross-claims and filed their own cross-claims for contribution and indemnification in the event of a judgment against any of them.

By Stipulation and Order dated June 11, 1991, the parties agreed to dismiss without prejudice Plaintiffs' claims against D & T for common law fraud and negligent misrepresentation. On September 26, 1991, this court certified the case as a class action.

Plaintiffs then reached a settlement with Del–Val, Kenbee and almost all of the Individual Defendants (the "Settling Defendants"). That settlement is set forth in the Stipulation of Partial Settlement (the "Agreement"), dated September 10, 1993, and the Supplement to Stipulation of Settlement (the "Supplement"), dated November 23, 1993 (collectively, the "partial settlement agreement"). Only three defendants (the "Non–Settling Defendants") did not join in the stipulation of partial settlement: D & T, IJL, and Wright.[4] After a hearing, held pursuant to Fed.R.Civ.Pro. 23(e), to evaluate the fairness, reasonableness and adequacy of the partial settlement, this court approved the Agreement and the Supplement on December 3, 1993.

The partial settlement provides that Plaintiffs will receive common stock in Del–Val,

notes issued by Del–Val, $1.4 million in cash (which Del–Val may elect to pay in common stock), and various forms of non-pecuniary consideration, including Settling Defendants' promise to cooperate with Plaintiffs' counsel in various ways in any continuing litigation.[5] In return, Plaintiffs agreed to release all claims against the Settling Defendants arising out of the facts and transactions described in the Complaint.

As originally drafted by Plaintiffs and Settling Defendants, the settlement agreement would have provided that Settling Defendants could apply to the court for an order barring any claims for contribution or indemnity that had been or might be brought against them, thereby protecting Settling Defendants from any potential for further liability to Plaintiffs or to Non–Settling Defendants. At a pre-trial conference on November 15, 1993, following extensive briefing on the issue of what type of bar order, if any, this court should enter, we indicated that we would enter a contribution bar order combined with a judgment credit based on proportional fault. Under that credit method, any judgment that Plaintiffs receive against Non–Settling Defendants would be reduced by the portion of the judgment attributable to Settling Defendants' share of fault, as determined by the finder of fact at the trial of the class claims.[6]

3. Specifically, these directors are Golden, Katz, Parson, Read, Rosenberg, and Smithline.

4. Wright, although a Non–Settling Defendant, has not participated in any of the proceedings before this court. The court has been informed that he has filed for bankruptcy pursuant to both Chapter VII and Chapter XI.

5. Specifically, the additional consideration includes: 1) Settling Defendants agreed to maintain relevant documents and to be subject to discovery and depositions, 2) Stern assigned and transferred $3.8 million worth of rights, partnership interests, and other property in order to enable Del–Val to contribute to the settlement of various litigations in which it is involved, 3) Settling Defendants voluntarily submitted to, and will continue to be available for, interviews with Plaintiffs, 4) Settling Defendants agreed to appear at trial if requested to do so by Plaintiffs, and 5) Settling Defendants agreed to cooperate with Plaintiffs' settlement counsel should counsel apply to the SEC for a No–Action letter with respect to any of the securities to be issued

pursuant to the provisions of the Agreement. *See Sett.*, at ¶¶ 2–8.

6. For instance, if the jury returned a verdict of $1,000,000 for Plaintiffs, and found Settling Defendants 60% at fault, then Non–Settling Defendants would be liable to Plaintiffs for only $400,000.

Courts commonly enter contribution bar orders where the plaintiff settles with only some of the defendants. If no bar order were entered, the settling defendant would have little incentive to settle since it would remain vulnerable to subsequent contribution actions brought by the non-settling defendant. As compensation for losing its contribution rights, the non-settling defendant generally receives a judgment credit. Courts have considered two other methods of calculating the judgment credits: pro tanto, "in which the judgment is reduced by the amount paid by the settling defendants," and pro rata, "in which the judgment amount is simply divided by the number of defendants, settling and non-settling, that are found liable." *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 160 & n. 3 (4th Cir.1991).

Plaintiffs strongly objected to the entry of a proportionate share bar order. Rather than wait for the court's ruling on this issue, Plaintiffs and Settling Defendants negotiated their own contractual indemnification provision, which is set forth in the Supplement, to take the place of a bar order and court-ordered judgment credit. Plaintiffs and Settling Defendants agreed that if Plaintiffs win a judgment against Non–Settling Defendants and if Non–Settling Defendants obtain a judgment against Settling Defendants in a subsequent contribution action, Plaintiffs will reduce the amount of their judgment against Non–Settling Defendants by either the settlement amount or the amount of Non–Settling Defendants' judgment for contribution against Settling Defendants, whichever is greater. *See Supp.*, at ¶ 2. The Supplement also provides that Settling Defendants will be obligated to defend in good faith against any contribution claims brought against them and that Settling Defendants will not compromise those claims without the prior approval of Plaintiffs' Settlement Counsel. *See Supp.*, at ¶ 3.

Plaintiffs' expert, Hugh R. Lamle of M.D. Sass Investors Services, Inc., valued the settlement at $10.822 million. On December 3, 1993, relying on Plaintiffs' statement to the court that they would not dispute that value in any subsequent proceedings, we ordered that any judgment that might subsequently be entered against Non–Settling Defendants in the class action would be reduced by $10,-822,000, subject to possible further reduction if the judgment reduction provision in the settlement agreement became applicable.

On April 20, 1994, the Supreme Court issued its decision in *McDermott, Inc. v. AmClyde*, —— U.S. ——, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), which held that, in admiralty cases where settlement has been reached with some but not all defendants, a non-settling defendant is entitled to a proportionate share judgment reduction as a matter of law. A contribution action against the settling defendant is therefore unnecessary, since a non-settling defendant will pay only that portion of the judgment that corresponds to its percentage of fault. *See id.*, at ——, 114 S.Ct. at 1466. In light of the *McDermott* decision, Settling Defendants filed a motion for summary judgment dismissing D & T's cross-claims for contribution. D & T filed a cross-motion for summary judgment dismissing the Settling Defendants' cross-claims for contribution and indemnification. Both D & T and Settling Defendants argue that the proportionate share rule adopted in *McDermott* applies to partial settlements of federal securities actions and that their claims for contribution are therefore unnecessary. Plaintiffs oppose the dismissal of the cross-claims, arguing that dismissing those claims would violate the provisions of the partial settlement and that the proportionate share rule does not apply to securities fraud actions.

## DISCUSSION

Federal courts may grant summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). While the parties vigorously disagree as to many of the facts relevant to the underlying class action, the facts regarding the terms of the partial settlement and the contribution and indemnification cross-claims brought by the defendants are not disputed. Instead, we are faced with two legal questions. First, do the provisions of the partial settlement agreement preclude the granting of summary judgment dismissing the cross-claims for indemnification and contribution? Second, does the proportionate share rule adopted for partial settlements in admiralty actions in *McDermott* apply to partial settlements in federal securities actions, rendering the Defendants' contribution and indemnification cross-claims unnecessary and impermissible?

### I. Effect of Partial Settlement Agreement

■ "A settlement is a contract, and once entered into is binding and conclusive." *Janneh v. GAF Corp.*, 887 F.2d 432, 436 (2d Cir.1989), *cert. denied*, 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990). If the terms of the settlement agreement govern the situation before the court, then we have a duty to enforce the agreement. *See Meetings & Expositions, Inc. v. Tandy Corp.*, 490

F.2d 714, 717 (2d Cir.1974). Plaintiffs argue that the partial settlement agreement controls the manner in which the actions for contribution and indemnification must proceed and that dismissing the Defendants' respective cross-claims would violate both its express terms and its spirit. We disagree.

■ First, D & T is not a party to the partial settlement and may seek and be granted summary judgment dismissing the claims against it without violating the terms of a settlement it did not negotiate or agree to.

■ Second, Settling Defendants may also move for and be granted summary judgment without abrogating the express terms of the partial settlement. Although Plaintiffs' argument focuses on several provisions in the Supplement, we find that none of these clauses precludes the granting of summary judgment. For instance, the language of the judgment reduction provision in the Supplement refers only to future contingencies:

> "*In the event that* the Class obtains a judgment(s) against Non–Settling Defendant(s) . . . *and in the event that* any of the Non–Settling Defendant(s) prosecute(s) any action . . . for . . . contribution . . . *and* any Non–Settling Defendant(s) obtains a judgment(s) . . . against any Settling Defendant, *then* the Class shall reduce the amount of the Class Judgment(s) . . . ."

*Supp.*, at ¶ 2 (emphasis added). The judgment reduction provision does not come into play until there is a valid judgment for contribution against Settling Defendants. If D & T's cross-claims for contribution are dismissed before trial, there will never be a judgment against Settling Defendants.

Furthermore, Settling Defendants agreed not to compromise any contribution claims without Plaintiffs' consent, *see Supp.*, at ¶ 3, but Settling Defendants' motion for summary judgment dismissing the claims against them does not seek to compromise those claims. Instead, Settling Defendants seek a judgment completely favorable to them. Finally, Settling Defendants agreed to defend in good faith against any claims for contribution. *See Supp.*, at ¶ 3. Moving for dismissal of the claims against them is wholly consistent with this obligation.

Plaintiffs argue that even if Settling Defendants have not violated the letter of the settlement agreement by moving to dismiss the claims against them, they have violated its spirit by seeking to avoid their obligation to defend against D & T's contribution claims at a second trial following the trial of the class claims. According to Plaintiffs, the partial settlement agreement requires two trials and the court provided for two trials in its Order dated December 3, 1993.

Although the partial settlement certainly contemplates the possibility of two trials and sets out a detailed procedure for coping with that eventuality, the language of the settlement agreement does not require that outcome. Moreover, our Order, like the judgment reduction provision, is couched in contingent language. The Order merely provides that:

> if a judgment is entered against non-settling defendants in this action at a later date, it will be reduced by the amount of $10,822,000, subject to possible further reduction depending upon the outcome of the trial of the claims of the non-settling defendants against the settling defendants for contribution or indemnity.

The Order, like the settlement agreement, lays out the procedures that the court and the parties would be obligated to follow if there were to be a second trial, but does not mandate a second trial.

Indeed, far from dictating this court's course of action in deciding these cross-motions, the settlement agreement and the court's Order are completely silent concerning the possibility that Settling Defendants' and D & T's cross-claims might be dismissed. At the time that the partial settlement agreement was drafted, it no doubt seemed highly unlikely that the cross-claimants would seek to have their contribution or indemnification actions dismissed. Nevertheless, Plaintiffs cannot read nonexistent requirements into the settlement agreement now that this eventuality has come to pass. The settlement agreement does not preclude D & T or Settling Defendants from seeking summary

judgment, nor does it preclude us from granting summary judgment.

## II. The Claims

Having determined that the settlement agreement does not dictate the disposition of the motions before us, we now examine the defendants' respective contribution and indemnification claims. We find that Settling Defendants are not entitled to contribution or indemnification based on Plaintiffs' common law causes of action or to indemnification based on Plaintiffs' federal securities claims. Accordingly, we dismiss those cross-claims. Both Settling Defendants' and D & T's cross-claims for contribution under federal securities law require further analysis, however.

### A. Settling Defendants' Contribution and Indemnification Claims Against D & T

Settling Defendants' cross-claims seek contribution or indemnification in the event that any of them is found responsible for wrongdoing on any of the counts alleged in the Complaint. Therefore, Settling Defendants have claimed contribution and/or indemnification for claims arising under Sections 11, 12(2) and 15 of the Securities Act of 1933, Sections 10(b) and 20 of the Securities Exchange Act of 1934, and the common law of fraud and negligent misrepresentation.

■ With respect to the common law claims, which are governed by New York law, Settling Defendants may not request contribution for any claims that they have settled. See N.Y.Gen.Oblig.Law § 15–108(c) (McKinney 1989) ("A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person."); Glaser v. M. Fortunoff of Westbury Corp., 71 N.Y.2d 643, 529 N.Y.S.2d 59, 61, 524 N.E.2d 413, 415 (1988). D & T is therefore entitled to summary judgment dismissing Settling Defendants' cross-claims for contribution for common law fraud and negligent misrepresentation.

■ In addition, Settling Defendants are not entitled to indemnification for the common law claims against them. Under New York law, "[t]he right to indemnification may arise out of an express agreement of indemnification, or it may be implied by law in favor of one who is held liable solely by imputation of law because of his relation to the actual wrongdoer." Jordan v. Madison Leasing Co., 596 F.Supp. 707, 709 (S.D.N.Y. 1984) (citing, inter alia, Rogers v. Dorchester Assocs., 32 N.Y.2d 553, 347 N.Y.S.2d 22, 28 n. 2, 300 N.E.2d 403, 409 n. 2 (1973)). Relationships that support implied indemnification include employer/negligent employee, building owner/independent contractor, and motor vehicle owner/negligent driver. See D'Ambrosio v. City of New York, 55 N.Y.2d 454, 450 N.Y.S.2d 149, 152, 435 N.E.2d 366, 369 (1982). In the instant case, Settling Defendants do not allege that a contract exists between Settling Defendants and D & T that requires indemnification, nor do they allege the existence of any relationship between Settling Defendants and D & T, its independent auditor, that would support implied indemnification. Therefore, Settling Defendants' claims for indemnification on the claims for common law fraud and negligent misrepresentation are also dismissed.

■ Furthermore, Settling Defendants may not seek indemnification for federal securities claims. See Globus v. Law Research Service, Inc., 418 F.2d 1276, 1288–89 (2d Cir.1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); Epstein v. Haas Securities Corp., 731 F.Supp. 1166, 1187 (S.D.N.Y.1990). Courts do not allow indemnification for securities claims because permitting it would reduce each actor's incentive to perform its statutory duties carefully. See Globus, 418 F.2d at 1288. Settling Defendants' claims for indemnification on the securities counts must therefore be dismissed.

■ On the other hand, settling defendants in federal securities actions may sue for contribution.[7] See, e.g., Musick, Peeler &

---

7. Contribution actions are permissible under § 10(b) of the Securities Exchange Act of 1934, see Musick, —— U.S. at ——, 113 S.Ct. at 2086; and under § 11 of the Securities Act of 1933, see

§ 11(f), 15 U.S.C. § 77k(f) (1988). The Securities Acts do not expressly provide for contribution under any of the other sections under which Plaintiffs have brought claims. For purposes of

**554**

*Garrett v. Employers Insurance of Wausau,* —— U.S. ——, ——, 113 S.Ct. 2085, 2086, 124 L.Ed.2d 194 (1993) (settling defendants' subrogated insurers may sue non-parties for contribution); *Alvarado Partners, L.P. v. Mehta,* 723 F.Supp. 540, 550 (D.Colo.1989) (unlike many state statutes, "federal securities statutes do not expressly provide a settlement contribution bar rule."), *appeal dismissed,* 936 F.2d 582 (1991). Contribution is, however, available only to joint tortfeasors. *See In re Agent Orange Product Liability Litigation,* 818 F.2d 204, 207 (2d Cir.1987).

D & T argues that Settling Defendants have no right to claim contribution from D & T because Settling Defendants cannot be joint tortfeasors. *See Memorandum of Law in Response to the Motion of Settling Defendants for Summary Judgment,* at 7–8. Under the terms of the partial settlement, Plaintiffs have released all claims against Settling Defendants, *see Sett.,* at ¶ 23, and Settling Defendants have denied any liability to Plaintiffs, *see id.,* at ¶ F. Therefore, Settling Defendants can never be adjudged liable to Plaintiffs. D & T reasons that if Settling Defendants cannot be adjudged liable to Plaintiffs, then they are not tortfeasors. If they are not tortfeasors, then they cannot be joint tortfeasors and hence they may not sue D & T for contribution.

■■■■■ D & T has an incorrectly narrow view of the definition of joint tortfeasor. Joint tortfeasors are "two or more persons [who] are the joint participants or joint actors in the wrongful production of an injury to a third person." *Stratton Group, Ltd. v. Sprayregen,* 466 F.Supp. 1180, 1185 n. 6 (S.D.N.Y.1979). A party need not actually

be adjudged liable to the injured party to be a joint tortfeasor. Indeed, a party need not even be sued by the plaintiff in the underlying action in order to be liable for contribution. *See Musick,* —— U.S. at ——, 113 S.Ct. at 2086 (settling defendants' subrogated insurers may sue non-parties for contribution). All that is required are "allegations that the defendant and third-party defendant were joint participants in. the fraud alleged by plaintiff." *Greene v. Emersons, Ltd.,* 102 F.R.D. 33, 36 (S.D.N.Y.1983), *aff'd,* 736 F.2d 29 (2d Cir.1984).[8] Settling Defendants have certainly made allegations that, if proven, would establish that Settling Defendants and D & T, their independent auditor, were jointly involved in causing injury to Plaintiffs.[9] These allegations are sufficient to support Settling Defendants' cross-claims for contribution on Plaintiffs' federal securities claims. These claims therefore survive initial scrutiny, and we must decide whether the proportionate share rule applies under the circumstances of this case.

### B. D & T's Cross-claims for Contribution Against Settling Defendants

Plaintiffs have brought claims against D & T under § 11 of the Securities Act of 1933, and under § 10(b) of the Securities Exchange Act of 1934. D & T has cross-claimed for contribution from Settling Defendants in the event that it is found liable to Plaintiffs on either of those claims. As discussed above, actions for contribution are permitted under both of these sections. Therefore, we must also consider whether

---

deciding this motion, however, we need not ascertain whether contribution is available under those provisions. It is sufficient that actions for contribution are permitted for certain violations of the federal securities laws.

8. The defendants need not have planned to act jointly or even have knowingly participated in jointly injuring a plaintiff. Independent violations of the securities laws that injure the same plaintiff are sufficient to support actions for contribution as long as the third-party complaint adequately alleges that the third-party defendant has violated the securities laws and participated in the underlying fraud. *See McCoy v. Goldberg,* 778 F.Supp. 201, 204–05 (S.D.N.Y.1991).

9. Specifically, Settling Defendants allege that D & T had access to all of Del–Val's financial data, that D & T attended meetings of the Audit Committee of Del–Val's Board of Directors, and that Settling Defendants relied on D & T to apply Generally Accepted Accounting Standards and to apprise Settling Defendants of any irregularities in Del–Val's finances. They allege that D & T's failure to do so is responsible for the inclusion of information that Plaintiffs allege is materially false and misleading in several of Del–Val's 1989 and 1990 reports. *See Del–Val Financial Corporation and the Outside Directors' Answer to Cross–Claim of Deloitte & Touche and Cross–Claim Against Deloitte & Touche,* at ¶¶ 1–5.

the proportionate share rule applies to D & T's cross-claims.

## III. Judgment Reduction Procedure for Partially Settled Securities Cases

■ Having determined that both Defendants' contribution claims under the federal securities laws would have been permissible before the *McDermott* decision, we now turn to the question of whether the proportionate share rule applies to partial settlements in securities actions as well as in admiralty actions. We hold that it does. This conclusion leads us to grant Settling Defendants' motion to dismiss D & T's claims for contribution because those claims are unnecessary and impermissible. For the reasons developed below, however, we deny D & T's motion to dismiss Settling Defendants' contribution claims under the federal securities laws.

### A. Application of Proportionate Share Rule to Securities Cases

In *McDermott, Inc. v. AmClyde*, —— U.S. ——, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), the Supreme Court adopted a new rule governing judgment credit for partial settlements in admiralty cases. Plaintiff/Petitioner McDermott had purchased a crane from AmClyde that broke while lifting an oil and gas production platform, causing massive damage to the platform and to the crane. Plaintiff filed suit under admiralty law against AmClyde, the three companies that supplied the sling used to lift the platform, and River Don Castings, Ltd., the company that supplied the crane's hook. McDermott later entered into a partial settlement agreement with the defendants that provided the sling. At trial, the jury entered judgment for McDermott in the amount of $2.1 million and apportioned fault among the parties, finding that River Don was responsible for 38% of McDermott's injury. The case was before the Supreme Court to determine how much of the judgment River Don was obligated to pay. *See McDermott*, —— U.S. at ——–——, 114 S.Ct. at 1463–64.

After noting that there was general agreement that a non-settling defendant was entitled to some sort of judgment credit for any settlements between the plaintiff and other joint tortfeasors, the Supreme Court considered three alternative methods of calculating that credit. The first method would simply subtract the amount of the settlement from the judgment entered against the non-settling defendant without affecting the contribution rights of any joint tortfeasor who paid more than its equitable share of the judgment ("pro tanto with contribution"); the second would also subtract the amount of the settlement from the judgment, but would not allow any subsequent claims for contribution ("pro tanto without contribution"); the third option would reduce the judgment against the non-settling defendant by the amount of the equitable share of the settling defendant ("proportionate share").[10] *See id.* at ——, 114 S.Ct. at 1465. After identifying three factors that guided its analysis—consistency with the approach to fault in admiralty law, promotion of settlement and judicial economy, *see id.* at ——, 114 S.Ct. at 1467, the Supreme Court chose the proportionate share rule. Rejecting the pro tanto with contribution method as "clearly inferior," the Court found that the proportionate share

---

10. For example, assume that there are two defendants in a case. One settles with the plaintiff for $1 million. The other goes to trial, where the jury decides that the settling defendant was at fault for 75% of the injury to the plaintiff, while the non-settling defendant was 25% at fault. The jury awards the plaintiff a judgment against the non-settling defendant in the amount of $4 million.

Under the pro tanto approach without contribution (or with a contribution bar order in place), the judgment against the non-settling defendant is reduced by $1 million, the amount of the settlement, and the non-settling defendant must pay plaintiff $3 million, although its equitable share of the judgment is $1 million. Under the pro tanto approach with contribution, the non-settling defendant pays that same $3 million to the plaintiff, but can then sue the settling defendant for $2 million. Under this option, after the resolution of the contribution claim, the non-settling defendant's net payment is $1 million and the settling defendant's total payment is $3 million, corresponding to their equitable shares of the judgment. Under either of the pro tanto methods, the plaintiff receives $4 million.

Under the proportional approach, the $4 million judgment is reduced by 75% (the settling defendant's share of the fault) to $1 million. The non-settling defendant pays the plaintiff that $1 million. Plaintiff recovers only $2 million, despite winning a $4 million judgment.

rule was more consistent with the approach to fault in admiralty law than the pro tanto rule without contribution and that neither of the options had a clear advantage in promoting settlement or enhancing judicial economy. *See id.* at —— ——, 114 S.Ct. at 1467–70.

To date, there is very little case law addressing the issue of whether the *McDermott* proportionate share rule applies outside of admiralty law. *See T.B.G., Inc. v. Bendis,* 36 F.3d 916 (10th Cir.1994);[11] *Bragger v. Trinity Capital Enter. Corp.,* 30 F.3d 14 (2d Cir. 1994); *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 769 (7th Cir.1994) (proportionate share rule inapplicable in CERCLA action because incompatible with unique statutory liability scheme); *Cortec Indus., Inc. v. Sum Holding L.P.,* 858 F.Supp. 34, 35 (S.D.N.Y. 1994) (Memorandum and Order asking for briefing on issue of whether proportionate share rule applies outside of admiralty law; if so, "this Court's prior opinion adopting the pro tanto rule for the case at bar cannot stand.").

The Second Circuit's opinion in *Bragger,* a securities fraud class action, contains that court's only comment on *McDermott.* Although the appeal was dismissed and the judgment below vacated because of mootness, the Second Circuit commented in dictum that:

[I]t would seem unwise in the present instance to leave standing the district court ruling that any judgment against appellant be reduced on a pro tanto basis. We think

it imprudent in light of a recent unanimous decision of the Supreme Court holding, after thorough analysis of the pro tanto and proportional judgment reduction methods, that at least in admiralty suits for damages, the proportional reduction approach is best.

*Bragger,* 30 F.3d at 17. This statement invites consideration of the possibility that the proportionate share rule may apply to partial settlements of securities actions. Because there is no case law addressing whether the proportionate share rule governs partial settlements in securities cases in which the court must determine the judgment credit method, we must analyze the factors identified in *McDermott* to determine whether the reasoning set out by the Supreme Court in that case is applicable in the context of this one.[12]

### 1. Consistency

The first *McDermott* factor is the degree to which the proportionate share rule is consistent with the approach to fault taken in the relevant area of law. The *McDermott* Court stated that the proportionate share rule is more consistent than the pro tanto method with the approach to fault announced in *United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), because, under that rule, in admiralty cases "a litigating defendant ordinarily pays only its proportionate share of the judgment." *McDermott,* —— U.S. at ——, 114 S.Ct. at 1467. Plaintiffs use this statement as the basis for their argument that while the

---

11. In *T.B.G.,* a multi-defendant securities case, the district court had approved a partial settlement agreement that was expressly contingent upon the entry of a contribution bar order containing a pro tanto judgment credit. On appeal, the Tenth Circuit reversed, holding that the district court had no power to bar contribution where no determination of proportionate fault had been or could be made at the trial between the plaintiff and the non-settling defendants. The appellate court reasoned that the district court lacked jurisdiction to decide the issue of proportionate fault at trial because none of the defendants had filed contribution claims.

According to the court, *McDermott* did not require the use of the proportionate share rule in that case because the court could only approve or reject the settlement agreement presented to it and did not have "the freedom to weigh and choose from various possible credits." *T.B.G.,*

36 F.3d at 923. By contrast, the settlement agreement in this case does not specify a particular judgment credit method that we must apply under these circumstances, and both Settling Defendants and D & T have filed contribution claims. The *T.B.G.* court further distinguished *McDermott* by noting that no bar order was at issue in *McDermott,* while the *T.B.G.* district court had entered one. *See id.* In this case, as in *McDermott,* no bar order has been entered.

12. As in admiralty law, federal common law governs the question of what constitutes the appropriate judgment credit to be given to non-settling defendants in partially settled securities cases. *See Singer v. Olympia Brewing Co.,* 878 F.2d 596, 600 (2d Cir.1989), *cert. denied,* 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990).

proportionate share rule is consistent with the proportionate approach to fault used in admiralty cases, it is not consistent with the joint and several liability that applies in securities cases. *See also T.B.G.*, at 927–28 (dictum). Plaintiffs' argument fails because they inaccurately describe the approach to fault taken by both admiralty law and securities law and because they ignore the Supreme Court's own explanation of the interaction between the proportionate share rule and joint and several liability.

The fault scheme in admiralty actions is more complex than the straightforward proportionate division that Plaintiffs describe. In *Reliable Transfer*, the Court abandoned the traditional rule of dividing damages equally between two vessels involved in a collision. Instead, the Supreme Court prescribed a rule apportioning damages according to the proportional fault of the parties. *See Reliable Transfer*, 421 U.S. at 411, 95 S.Ct. at 1715–16. In the strictest sense, this holding applies only to the apportionment of damages between the plaintiff and the defendant in a collision case. It has, however, been interpreted more broadly to require a proportional fault determination "when such an allocation can reasonably be made." *McDermott*, —— U.S. at ——, 114 S.Ct. at 1465; *see also Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 271, 99 S.Ct. 2753, 2762, 61 L.Ed.2d 521 (1979) ("[W]e recently acknowledged the sound arguments supporting division of damages between parties before the court on the basis of their comparative fault. . . .").

Subsequently, the Court decided *Edmonds,* in which the defendants were the plaintiff's employer (a stevedore) and the owner of the ship on which the plaintiff was injured. The jury determined that the plaintiff was 10% at fault, the shipowner was 20% at fault and the stevedore, whose liability was limited by a worker's compensation-type statute, was 70% at fault. The district court refused the shipowner's request for a proportionate judgment credit and allowed the plaintiff to collect the full judgment from the shipowner, less only the 10% attributable to the plaintiff's own negligence. *See Edmonds,* 443 U.S. at 258, 99 S.Ct. at 2755.

The Supreme Court upheld this ruling and explained that the proportionate share rule of *Reliable Transfer,* which it referred to as a "contribution shortcut," was appropriate where all of the parties to an action were before the court and damages could be allocated rather easily according to proportional fault. The proportionate share rule was not appropriate, however, where the stevedore was not, and could not be, because of the statute, before the court. Under those circumstances, it was not fair to the plaintiff to limit his recovery by granting the shipowner a proportionate share judgment reduction. *See id.,* at 272 n. 30, 99 S.Ct. at 2762 n. 30.

The *McDermott* Court interpreted *Edmonds* as "reaffirming the well-established principle of joint and several liability [that] was in no way abrogated by *Reliable Transfer*'s proportionate fault approach." *McDermott,* —— U.S. at ——, 114 S.Ct. at 1471 (citing *Edmonds,* 443 U.S. at 271–72 & n. 30, 99 S.Ct. at 2762 & n. 30). Plaintiffs are therefore incorrect in their assertion that admiralty defendants never have to pay more than their equitable share of their obligations to plaintiffs. Despite the somewhat sweeping language Plaintiffs quoted from *McDermott,* joint and several liability is part of the admiralty law's approach to fault.

Moreover, the *McDermott* Court explicitly rejected an argument identical to the one that Plaintiffs raise here. River Don, the non-settling defendant in that case, argued that the proportionate share rule was inconsistent with the Court's holding in *Edmonds.* The Court found that the proportionate share rule was consistent both with joint and several liability, as reaffirmed in *Edmonds,* and with the proportionate fault approach taken in *Reliable Transfer.* The Court explained that:

> Joint and several liability applies when there has been a judgment against multiple defendants. It can result in one defendant's paying more than its apportioned share of liability when the plaintiff's recovery from other defendants is limited by factors beyond the plaintiff's control, such as a defendant's insolvency. . . . [T]he proportionate share rule . . . applies when there has been a settlement. In such

cases, the plaintiff's recovery against the settling defendant has been limited not by outside forces, but by its own agreement to settle.

*McDermott,* —— U.S. at ——, 114 S.Ct. at 1471; *see Associated Electric Cooperative v. Mid–America Transportation Co.,* 931 F.2d 1266 (8th Cir.1991) (pre-*McDermott* admiralty case; distinguishing *Edmonds* from partial settlement situation and adopting proportionate share judgment reduction rule).

We find the Supreme Court's statement that the proportionate share rule is consistent with joint and several liability completely persuasive. Hence, even if Plaintiffs were correct in characterizing securities law as exclusively adhering to joint and several liability, we see no obstacle to applying the proportionate share rule to securities cases in which a partial settlement has been reached.

 Furthermore, the liability scheme in securities actions, particularly class action suits, is somewhat more complicated than the simple joint and several liability system that Plaintiffs describe. The basic rule in securities actions is joint and several liability among defendants against whom judgment is entered. *See Musick,* —— U.S. at ——, 113 S.Ct. at 2088 (parties who have violated securities laws "share joint liability for that wrong under a remedial scheme established by the federal courts"). Nevertheless, because courts recognize that "fundamental fairness demands a sharing of the liability" between joint tortfeasors, *In re Masters Mates and Pilots Pension Plan & I.R.A.P. Litigation,* 957 F.2d 1020, 1028 (2d Cir. 1992),[13] contribution actions among the settling and the non-settling defendants are permitted in securities actions to adjust the amounts paid by each defendant to correspond closely with the fault of each. *See, e.g., Musick,* —— U.S. at ——, 113 S.Ct. at 2086; *U.S.F. & G. v. Patriot's Point Develop-*

*ment Authority,* 772 F.Supp. 1565, 1572 (D.S.C.1991). Equitable distribution of the liability for securities violations is important to further the regulatory goal of deterrence:[14] if each wrongdoer pays its, and only its, share of the damages owed to each plaintiff, the appropriate level of deterrence required to prevent violations of the securities law should be achieved. *See Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 727 n. 7 (2d Cir.1981); *U.S.F. & G.,* 772 F.Supp. at 1572.

The existence of a partial settlement throws this deterrence mechanism out of kilter. The settling defendant may have settled for an amount of money that represents either more or less than its proportionate share of any judgment obtained by the plaintiff. In fact, given the uncertainties that surround settlement in advance of trial, the likelihood that the settlement amount corresponds exactly to the settling defendant's proportionate share of liability is very slim. Subsequent contribution actions between the defendants would be necessary to ensure that each defendant pays its equitable share of the damages.

A major motivating factor in settling, however, is to avoid litigation entirely. The defendants' incentive to settle is much reduced if they remain vulnerable to later actions for contribution. Indeed, courts have commented that "[a]nyone foolish enough to settle without barring contribution is courting disaster." *See Morin v. Trupin,* 1993 WL 248802, at *2 (S.D.N.Y. June 29, 1993) (quoting *In re Nucorp Energy Securities Litigation,* 661 F.Supp. 1403, 1408 (S.D.Cal.1987)). Accordingly, many settling defendants in securities class actions ask the court for an order barring any subsequent actions against the settling defendants for contribution or indemnification. *See, e.g., Bragger v. Trinity Capital Enterprise Corp.,* 1993 WL 287626

---

13. Although *Masters Mates* is an ERISA case, the Second Circuit looked to its decisions in *In re Ivan F. Boesky Securities Litigation,* 948 F.2d 1358 (2d Cir.1991), and *Singer,* both securities cases, for guidance in reaching its decision. *See Masters Mates,* 957 F.2d at 1030. In this case, we similarly look to *Masters Mates* for guidance in addressing this securities law issue.

14. The Second Circuit has described the goals of the securities laws as follows: "Civil liability under section 11 and similar provisions was designed not so much to compensate the defrauded purchaser as to promote enforcement of the Act and to deter negligence by providing a penalty for those who fail in their duties." *Globus,* 418 F.2d at 1288.

(S.D.N.Y. July 23, 1993), *judgment vacated as moot,* 30 F.3d 14 (2d Cir.1994); *Morin,* 1993 WL 248802. Alternatively, some defendants include in the settlement agreement a mechanism by which the plaintiff will indemnify the settling defendant for any judgment obtained by the non-settling defendant for contribution or indemnification. *See Supp.,* at ¶ 2; *Boesky,* 948 F.2d at 1368. Either of these methods eliminates the uncertainty that the settling defendant faces and facilitates settlement, but increases the likelihood that the amount that each defendant pays the plaintiff will not equal its equitable share of the damages.

If the court enters a contribution bar order, however, it is generally agreed that a judgment credit reducing the amount owed by the non-settling defendant to the plaintiff is appropriate to "mitigate the harshness of joint and several liability." *Masters Mates,* 957 F.2d at 1028. The law governing what form that credit should take can only be described as unsettled, however. The disagreements among the courts focus on which option strikes the most equitable and most efficient balance among the competing interests of the plaintiff, the settling defendant and the non-settling defendant.[15] At least some of the courts that have considered the issue have adopted a contribution bar combined with a proportionate share judgment reduction, without indicating whether they see any inconsistency between a proportionate share rule and the usual joint and several liability imposed by securities law. The policy reasons that led those courts to adopt the proportionate share judgment credit anticipate the *McDermott* Court's analysis: those

decisions stress equitable apportionment of damages among the parties and judicial efficiency, while taking into account the importance of promoting settlement. *See, e.g., Franklin,* 884 F.2d at 1230–31; *U.S.F. & G.,* 772 F.Supp. at 1572–75; *Alvarado,* 723 F.Supp. at 553; *Sunrise,* 698 F.Supp. at 1259–60.

The courts that have adopted the pro tanto rule also recognize that equitable apportionment of damages is an important concern in securities actions. A court may not enter a contribution bar order containing a pro tanto judgment reduction provision unless it has held a hearing to determine that the settlement was reached in good faith. *See Masters Mates,* 957 F.2d at 1029; *Jiffy Lube,* 927 F.2d at 160 n. 3. The parties to the settlement must therefore make a good faith effort to evaluate the settling defendant's proportionate liability and to agree upon a settlement amount that is reasonable in light of their estimate.

Under the first factor of the *McDermott* analysis, we therefore find that the proportionate share rule is consistent with the fault scheme set up by the securities laws and by the courts in securities actions. Plaintiff's argument to the contrary oversimplifies the fault schemes used in both admiralty and securities law and ignores the Supreme Court's unequivocal statement that the proportionate share rule is consistent with joint and several liability.

### 2. Promotion of Settlement

The second factor considered by the *McDermott* Court is the promotion of settlement. Encouraging settlement is a well-rec-

---

**15.** A number of courts across the country have considered issues relating to the adoption of a contribution bar order. For examples of opinions adopting the pro tanto judgment credit, *see In re Jiffy Lube Securities Litigation,* 772 F.Supp. 890, 892 (D.Md.1991); *In re Atlantic Financial Management, Inc. Securities Litigation,* 718 F.Supp. 1012 (D.Mass.1988); *Nucorp,* 661 F.Supp. 1403. For opinions that have adopted the proportionate share rule, *see Franklin v. Kaypro Corp.,* 884 F.2d 1222 (9th Cir.1989), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990); *U.S.F. & G.,* 772 F.Supp. 1565; *Alvarado,* 723 F.Supp. 540; *In re Sunrise Securities Litigation,* 698 F.Supp. 1256 (E.D.Pa.1988).

The Second Circuit's stance on this issue is not clear. Contribution bars are permitted, and the subsequent judgment credit must be for at least the amount of the settlement. *See Masters Mates,* 957 F.2d at 1031; *Singer,* 878 F.2d at 600. The Second Circuit has never prescribed a particular judgment credit method, *see Masters Mates,* 957 F.2d at 1030, and the lower courts have disagreed. *See Bragger,* 1993 WL 287626 (adopting pro tanto rule), *vacated as moot,* 30 F.3d 14; *Morin,* 1993 WL 248802 (adopting proportionate share rule); *Cortec Indus., Inc. v. Sum Holding, L.P.,* 1993 WL 88204 (S.D.N.Y. March 23, 1993) (adopting pro tanto rule), *reconsideration ordered,* 858 F.Supp. 34 (S.D.N.Y.1994) (court ordered briefing on effect of *McDermott*).

ognized goal of the federal courts, particularly in complex, multi-defendant litigation. *See McDermott*, — U.S. at ——, 114 S.Ct. at 1468 ("public policy wisely encourages settlements"); *Masters Mates*, 957 F.2d at 1028. Settlements must not be achieved at the cost of fairness to all of the parties, however. *See Sunrise*, 698 F.Supp. at 1261; *see also Masters Mates*, 957 F.2d at 1026 (court may only approve class action settlement that is fair, reasonable, and adequate).

Plaintiffs argue strenuously that application of the proportionate share rule to securities actions will sharply diminish a plaintiff's incentives to settle with any of the defendants in complex cases. They point out, correctly, that under the pro tanto method the non-settling defendant bears the risk of settlement, while under the proportionate share rule the plaintiff bears the risk that they may settle for less than the settling defendant's equitable share of fault. Given the uncertainty under which settlements are reached, the difference between the settlement amount and the settling defendant's equitable share of the judgment could be substantial. Under the pro tanto method, the plaintiff would recover the full amount of the judgment and the non-settling defendant might pay substantially more than its equitable share. Under the proportionate share rule, the non-settling defendant would pay only its equitable share of the judgment, but the plaintiff might receive substantially less than the full amount of the judgment. For this reason, the *McDermott* Court found that a pro tanto approach placed additional pressure on defendants to settle by "giving the defendant that settles first an opportunity to pay less than its fair share of the damages," *McDermott*, — U.S. at ——, 114 S.Ct. at 1468, but that the added pressure "comes at too high a price in unfairness." *Id.* at ——, 114 S.Ct. at 1469.

The concerns that the *McDermott* Court identified are equally prevalent in securities actions. Whether a multi-defendant action is brought under securities or admiralty law, under the pro tanto approach the plaintiff is assured of its full recovery, and therefore has no incentive to ensure that a settlement approximates the settling defendant's fair share of the liability. *See Sunrise*, 698 F.Supp. at 1259. This creates a danger of collusive settlements, where the guiltier defendant settles quickly to avoid paying a greater portion of a large judgment rendered at trial and where the plaintiff usually receives cash with which it can fund subsequent litigation.[16] *See Franklin*, 884 F.2d at 1230; *Sunrise*, 698 F.Supp. at 1259–60. The good faith hearing that a court must hold before entering a contribution bar order containing a pro tanto judgment credit provision is intended to minimize this danger. *See Masters Mates*, 957 F.2d at 1029; *Jiffy Lube*, 927 F.2d at 160 n. 3.

Plaintiffs' argument in this case that they would not have settled under a proportionate share rule is beside the point. First, we can never know for certain what they would have done under those circumstances. Second, the fact that Plaintiffs want a pro tanto rule does not require its adoption, because "while the federal policy of encouraging settlement is important, it does not completely overwhelm the considerations of fairness and deterrence which support a proportional rule." *Sunrise*, 698 F.Supp. at 1261. As the *Sunrise* court stated, "[T]he choice between pro tanto and proportional rules is a choice as to which party should bear the risk of a bad settlement, settling plaintiff or non-settling defendant." *Id.* at 1259. The *McDermott* Court, after evaluating the arguments on both sides, placed that risk on plaintiffs, stating that "[t]here is no reason to allocate any shortfall to the [non-settling] defendants, who were not parties to the settlement." *McDermott*, — U.S. at —— ——, 114 S.Ct. at 1471–72.

---

**16.** Under this particular settlement agreement, Plaintiffs may actually receive very little cash, since Del–Val's financial state is precarious and Plaintiffs have settled for a mixture of common stock and notes issued by Del–Val. However, there is no indication that the settlement agreement in this case was the product of any collusion between Settling Defendants and Plaintiffs. In general, nevertheless, that concern is present in securities actions, just as it is in admiralty actions, and its absence in this particular case does not render the *McDermott* analysis inapplicable to securities cases.

Because the concerns identified by the *McDermott* Court and by the courts in securities cases with respect to promoting settlement are so similar, we are bound by the Supreme Court's determination that, on balance, the pro tanto approach has "no clear advantage in promoting settlements." *Id.*, at ——, 114 S.Ct. at 1469. As the *McDermott* Court noted, other factors push plaintiffs to settle with as many defendants as possible before trial: "The parties' desire to avoid litigation costs, to reduce uncertainty, and to maintain ongoing commercial relationships is sufficient to ensure nontrial dispositions in the vast majority of cases." *Id.*, at —— ——, 114 S.Ct. at 1468–69.

### 3. Judicial Economy

The third factor that the *McDermott* Court considered is judicial economy. The Court compared the time and expense that the court and the parties would be likely to invest in an action under the pro tanto and the proportionate approaches. Under a pro tanto scheme, as compared to the proportionate share rule, the trial between the plaintiff and the non-settling defendant would presumably be shorter because the jury would not be responsible for apportioning liability between the defendants. On the other hand, although the plaintiff's involvement in litigation would be reduced, the court and the non-settling defendant would probably participate in a subsequent trial of contribution claims. If no good faith hearing were required to approve the partial settlement, this option might be more efficient overall. A good faith hearing is required, however, to decrease the potential for unfairness to the non-settling defendant. That hearing would require an estimate of each party's percentage of fault in order to evaluate the fairness of the settlement. *See McDermott*, —— U.S. at ——, 114 S.Ct. at 1469. The Court points out that the pro tanto approach will only save time if the good faith hearing is shorter and quicker than apportioning fault at trial, which may well be true "given the cursory nature of most good-faith hearings." *Id.*, at ——, 114 S.Ct. at 1469. The Court also notes, however, that apportioning liability at the trial between the plaintiff and the non-settling defendant may in fact require little or no additional trial time as the settling defendant

must often be present to give testimony necessary for the complete and accurate presentation of the facts of the case to the jury. *See id.*, at —— —— ——, 114 S.Ct. at 1469–70. Based on its assessment of these factors, the Supreme Court concluded that neither approach has a clear advantage with respect to judicial economy.

Courts discussing the implementation of contribution bar orders in securities cases have considered the same issues. *See Masters Mates*, 957 F.2d at 1029; *Jiffy Lube*, 772 F.Supp. at 892; *U.S.F. & G.*, 772 F.Supp. at 1574–75; *Sunrise*, 698 F.Supp. at 1259. Furthermore, they note that if the good-faith hearing is conducted too cursorily, it will not adequately safeguard the interests of the parties, *see Alvarado*, 723 F.Supp. at 553, while a thorough hearing risks "'bogging down the settlement process in a miniature trial before trial,'" *Franklin*, 884 F.2d at 1230 (quoting *Donovan v. Robbins*, 752 F.2d 1170, 1181 (7th Cir.1985) (ERISA)). Because the judicial economy concerns are so similar in securities cases and in admiralty actions, this court finds that the Supreme Court's determination that neither rule has a clear advantage with respect to judicial economy is equally applicable to securities actions.

Application of the *McDermott* analysis to securities actions shows that the issues raised by partial settlements in admiralty cases and in securities actions are strikingly similar. The proportionate share rule is consistent with the liability scheme in each area of the law. Our discussion of the effect of the proportionate share rule on promotion of settlement and judicial economy is necessarily somewhat speculative, as was the Supreme Court's in *McDermott*, but the arguments for and against each rule under each factor are virtually identical. We therefore find that the proportionate share rule applies to actions under the securities laws as well as to actions under admiralty law.

Of course, prior to *McDermott*, other courts that evaluated these same policy concerns reached a different conclusion about the optimal rule and adopted the pro tanto method. *See Jiffy Lube*, 772 F.Supp. 890; *Atlantic Financial*, 718 F.Supp. 1012; *Nu-*

*corp,* 661 F.Supp. 1403. Plaintiffs in this case argue vigorously in favor of a pro tanto rule on policy grounds, urging that, under an analysis guided by the factors identified in *McDermott,* the pro tanto approach is preferable in partially settled securities actions. The *McDermott* decision has settled this question for us, however. Because we find that the concerns in securities actions and in admiralty actions in which there are partial settlements are sufficiently similar that the proportionate share rule should apply to securities actions as well, we need not revisit the arguments for and against each judgment credit method.

Instead, we hold that the proportionate share judgment reduction rule applies to this case. Because D & T will not be required to pay more than its equitable share of any judgment Plaintiffs may obtain against it, its contribution action against Settling Defendants is unnecessary. *See McDermott,* —— U.S. at ——, 114 S.Ct. at 1466. We therefore grant Settling Defendants' motion for summary judgment dismissing D & T's action for contribution. In accordance with the requirements of the proportionate share rule, we will instruct the jury at the trial of the class claims to apportion fault among the Defendants.

#### B. Effect of the One–Satisfaction Rule

The fate of Settling Defendants' action seeking contribution from D & T is less clear. Certainly, if D & T pays its full proportionate share of any judgment against it won by Plaintiffs, Settling Defendants cannot require D & T to pay more than its equitable share of the damages. If this court could apply the proportionate share rule without modification, then dismissal of Settling Defendants' claim for contribution from D & T would certainly be appropriate.

■■■ The application of the proportionate share rule is not that simple in this Circuit, however. The Second Circuit has adopted the one-satisfaction rule, which provides that a plaintiff's total recovery may not exceed the amount of the judgment that it obtains in an action based on any given injury. *See Singer,* 878 F.2d at 600 (applying one-satisfaction rule to partially settled securities case). This rule is firmly entrenched: almost every court in this Circuit that has discussed the issue of judgment credit or bar orders in partially settled securities cases has cited *Singer.*[17] *See Masters Mates,* 957 F.2d at 1030; *Bragger,* 1993 WL 287626, at *1, *Morin,* 1993 WL 248802, at *4. In addition, our Order dated December 3, 1993 provides that, as required by the one-satisfaction rule, any judgment obtained by Plaintiffs in the trial of the class claims will be reduced by at least $10.822 million, the value of the settlement as determined by Plaintiffs' expert.

As D & T correctly points out in its brief, the one-satisfaction rule might be violated if Settling Defendants settled for more than their proportionate share of the judgment and D & T were required to pay its proportionate share. *See Memorandum of Law in Response to the Motion of Settling Defendants for Summary Judgment,* at 12. Under those circumstances, Plaintiffs would recover more than the amount of the judgment on the class claims. To avoid this "overcompensation," D & T proposes that this court reduce any judgment won by Plaintiffs against D & T by either Settling Defendants' proportional share of fault or the amount of the settlement, whichever is greater.[18]

---

**17.** The Second Circuit has stated that *Singer* did not choose any particular judgment credit rule: it merely required that the judgment be reduced by at least the amount of the settlement. *See Masters Mates,* 957 F.2d at 1031. This left open the possibility that a plaintiff might recover less than the amount of the judgment if the settlement amount was less than the settling defendant's equitable share of the judgment, but not the possibility that a plaintiff could recover more than the amount of the judgment if the opposite were true.

**18.** In *F.D.I.C. v. Deloitte & Touche,* 834 F.Supp. 1155, 1162 (E.D.Ark.1993) (F.D.I.C. action), the court addressed the effect of the one-satisfaction rule on the proportionate share judgment reduction rule that it adopted. The court suggested the same approach that D & T has suggested here as a way to avoid the overcompensation problem. That court, however, was ruling only on a contribution action brought by the nonsettling defendant. It had no reason to consider the effect of the one-satisfaction rule on contribution actions brought by the settling defendants.

Under D & T's suggested method, D & T would pay its proportionate share of the judgment if Settling Defendants settled for less than their proportionate share of fault. In that case, any contribution action by Settling Defendants would be unnecessary. If, on the other hand, Settling Defendants settled for more than their share of fault, the allocation of payment among the Defendants would depend on the permissibility of contribution. If Settling Defendants could not bring an action seeking contribution from D & T, they would pay more than their equitable share of the judgment, while D & T would pay less than its share. If Settling Defendants could seek contribution, however, each defendant would pay its equitable share of the judgment.[19]

We are afforded no direct guidance concerning the viability of Settling Defendants' contribution action. The *McDermott* opinion says nothing about the contribution rights of the settling defendant. Indeed, all of the case law that this court has found on the subject of partial settlements, judgment credits and contribution bars has focused exclusively on the rights of the non-settling defendant and the plaintiff.

Dictum in *McDermott* indicates, however, that the one-satisfaction rule should not be applied to reduce the amount that the non-settling defendant is obligated to pay. In discussing the interaction between the one-satisfaction rule and the proportionate share · rule, the *McDermott* Court stated that if it were presented with a situation in which the plaintiff would be overcompensated, it would not apply the one-satisfaction rule in the partial settlement context.[20] The Court found that "[t]he law contains no rigid rule against overcompensation.... [M]aking tortfeasors pay for the damage they cause can be more important than preventing overcompensation." *McDermott*, —— U.S. at —— – ——, 114 S.Ct. at 1470–71. The Court continued: "It seems to us that a plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of the total loss." *Id.* at ——, 114 S.Ct. at 1471.

Perhaps because the settling defendant in *McDermott* did not seek contribution, the only alternatives that the Court considered with respect to the application of the one-satisfaction rule were that the plaintiff would be overcompensated or that the non-settling defendant would pay less than its equitable share of the damages. We see a third alternative: adopting D & T's suggested judgment reduction method, but allowing the settling defendant to seek contribution from the non-settling defendant for the amount by which the settlement amount exceeds the settling defendant's proportionate share of the judgment.

This approach is in keeping with the *McDermott* Court's focus on the equitable apportionment of damages among the defendants, since after the resolution of the settling defendant's contribution claims each defendant will pay its proportionate share of

---

**19.** Using the figures from the example in footnote 10, *supra*, assume that the settling defendant settles for $1 million and the jury returns a verdict against the non-settling defendant for $4 million, while finding that the settling defendant is 0% liable and the non-settling defendant is 100% liable. If the one-satisfaction rule applies and the settling defendant is not permitted to sue for contribution, the plaintiff would recover $4 million, the settling defendant would pay $1 million, and the non-settling defendant would pay the remaining $3 million.

If the one-satisfaction rule applies and the settling defendant is permitted to recover contribution, however, the plaintiff would still recover $4 million, but the non-settling defendant would pay the full amount of the judgment: $3 million to the plaintiff and $1 million to the settling defendant. The settling defendant's net payment would be $0, consistent with the jury's determination that it was not at fault.

**20.** The respondents in *McDermott* argued that the proportionate share rule violated the one-satisfaction rule. The Court did not decide this issue because it found that the facts before it did not present an overcompensation problem. Because AmClyde, a non-settling defendant, was 32% responsible for McDermott's injuries but was immune from paying damages under its contract with McDermott, the most that McDermott could recover was the $1 million settlement plus $798,000 from River Don, which represented River Don's equitable share of the $2.1 million judgment. Therefore, there was no risk that the plaintiff would recover an amount in excess of $2.1 million. *See McDermott*, —— U.S. at ——, 114 S.Ct. at 1470.

**564**

the plaintiff's damages. Furthermore, the plaintiff's recovery will be unaffected by the outcome of the settling defendant's suit for contribution. In accordance with the *McDermott* Court's allocation of risk, the plaintiff bears the risk of settling for less than the settling defendant's share of the liability whether or not the settling defendant is permitted to bring an action for contribution. This approach also adheres to the one-satisfaction rule without reducing the amount for which the non-settling defendant is liable, thereby eliminating the *McDermott* Court's concerns with respect to applying the one-satisfaction rule.

Our recognition of the settling defendant's right to bring an action for contribution creates the possibility that, under some circumstances, there may be a trial following the trial of the class claims to resolve the settling defendant's contribution claims. This subsequent trial would most likely cover much of the same ground as the trial of the class claims and could be quite wasteful of the court's and the parties' resources. We may not, however, refuse to recognize a settling defendant's right to contribution merely to save the court and the parties the trouble of trying valid claims. In addition, the settling defendant will only have a claim for contribution where it settled for more than its equitable share of the damages. It seems unlikely that the settling defendant will overestimate its potential liability to the plaintiff. Quite the contrary, the Supreme Court has noted that

> in most cases in which there is a partial settlement, the plaintiff is more apt to accept *less* than the proportionate share that the jury might later assess against the settling defendant, because of the uncertainty of recovery at the time of settlement negotiations and because the first settlement normally improves the plaintiff's litigating posture against the nonsettlors.

*McDermott,* —— U.S. at ——, 114 S.Ct. at 1471. Finally, when the settling defendant's contribution claim against the non-settling defendant has been filed prior to the trial of

the class claims, as it has in this case, the claims may be tried together and the jury can render a verdict on both actions at the same time. This procedure will eliminate the potential for duplication and waste.

Accordingly, we hold that any judgment obtained by Plaintiffs against D & T will be reduced by Settling Defendants' proportionate share of the fault or by the amount of the settlement ($10.822 million), whichever is greater. Settling Defendants may maintain an action for contribution based on Plaintiffs' securities claims. If they wish to pursue their contribution claims, however, they must do so at the trial of the class claims.

### IV. Effect of Ruling on Settlement Agreement

Finally, we must determine what effect, if any, these rulings have on the partial settlement agreement. Plaintiffs argue that if summary judgment were granted to D & T and Settling Defendants, resulting in the apportionment of liability among the Defendants at the trial of the class claims, the damage done to the carefully wrought provisions of the settlement agreement would be so substantial that the court's only possible course would be to rescind the settlement agreement.

Of course, our ruling does not create precisely the situation that Plaintiffs fear. We have granted summary judgment on D & T's contribution claims and on some of Settling Defendants' contribution claims, but Settling Defendants' contribution claims for securities law violations will be finally disposed of at a later stage in this litigation. Nevertheless, liability will be apportioned among the Defendants at the trial of the class claims and, because D & T's contribution claims have been dismissed, Settling Defendants will not be obligated to defend the issue of their proportionate fault. Given the similarities between this situation and the one on which Plaintiffs based their argument for rescission, we will address the issues that they raise.

 Under New York law,[21] "[t]here is no hard and fast rule on the subject of

---

**21.** A choice of law clause in the settlement agreement provides that New York law governs its

interpretation and application. *See Sett.,* at ¶ 30.

rescission, for the right usually depends on the circumstances of the particular case." *Callanan v. Powers,* 199 N.Y. 268, 92 N.E. 747, 752 (1910). Rescission is permitted where there is fraud or duress in the inducement of the contract, failure of consideration, inability to perform, or a breach of the contract so substantial that it defeats the object of the parties in making the contract. *See Babylon Assocs. v. County of Suffolk,* 101 A.D.2d 207, 475 N.Y.S.2d 869, 874 (1984) (citing *Callanan,* 92 N.E. at 752); *Baratta v. Kozlowski,* 94 A.D.2d 454, 464 N.Y.S.2d 803, 806· (1983). The Plaintiffs have made no allegations of fraud, duress, inability to perform or failure of consideration. Because the terms of the settlement agreement do not apply where the Defendants' cross-claims are dismissed by the court, Settling Defendants will not be in breach of the settlement agreement at all, much less substantially, as a result of receiving summary judgment on D & T's cross-claims. Plaintiffs are therefore not entitled to rescission of the settlement agreement.

Even if Settling Defendants were in breach of the settlement agreement following the dismissal of the contribution claims, that breach would not be so substantial as to require rescission. The only argument that Plaintiffs raise in their attempt to demonstrate a substantial difference between the proportionate share rule and the procedure outlined in the settlement agreement is the so-called "empty chair syndrome." Plaintiffs contend that if Settling Defendants are not a party to the action where proportional fault is determined, Non–Settling Defendants will point to the "empty chair" and argue that Settling Defendants bear the lion's share of the blame for the alleged acts. *See also Jiffy Lube,* 772 F.Supp. at 894. Plaintiffs therefore run the risk that the jury will allocate a lower proportion of fault to the Non–Settling Defendants' than is warranted. If Non–Settling Defendants must pay only that portion of the judgment that corresponds to the jury's determination of their proportion of fault, Plaintiffs would recover less than they are actually entitled to from Non–Settling Defendants. Plaintiffs argue that, in order to counteract this possibility, they would be obliged to defend Settling Defendants in ad-

dition to presenting their own case at the trial of the class claims, without commensurate access to Settling Defendants' witnesses and documents. Plaintiffs argue, in short, that a major goal of the settlement agreement they negotiated with Settling Defendants was to avoid the effects of the empty chair syndrome and that the frustration of this aim renders essential aspects of the settlement agreement meaningless.

We are mindful of the psychological dynamics of the courtroom and the risk that a jury may find it easier to blame a non-party. We are also mindful of the possibility that Plaintiffs may to some extent be obliged to make Settling Defendants' case as well as their own to avoid the risk of a skewed fault determination. In this case, however, Settling Defendants will, if they wish to pursue their contribution claims, be required to try them to the same jury that will be deciding the class claims. Under these circumstances, no empty chair problem exists.

Settling Defendants could, of course, elect not to pursue their contribution claims if they believe that they have settled for less than their equitable share of any damages Plaintiffs may recover. Even if Settling Defendants are not present at the trial to argue their contribution claims, however, they will be present as witnesses. In fact, as Settling Defendants are the company and the directors of the company that allegedly issued securities under fraudulent circumstances, it would be impossible for Plaintiffs to make their case against any or all of the defendants without extensive examination of the roles of these key players. Furthermore, Settling Defendants are contractually obligated by the settlement agreement to be ·available to Plaintiffs as witnesses and to provide any information that Plaintiffs require. *See Sett.,* at ¶¶ 2, 5–7. Even if Settling Defendants do not pursue their contribution claims, the additional burden on Plaintiffs at the trial of the class claims would not be so substantial as to require rescission of the entire settlement agreement.

## CONCLUSION

For the foregoing reasons, this court grants Settling Defendants' motion for sum-

mary judgment dismissing D & T's contribution claims. D & T's motion for summary judgment is granted as to Settling Defendants' indemnification and state law contribution claims, but is denied as to their contribution claims based on federal securities law.

SO ORDERED.